[Cite as *Gilson v. Gilson*, 2011-Ohio-6640.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SHIRL ANN GILSON, | ) | |
| | ) | CASE NO. 10 HA 3 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| THOMAS DAVID GILSON, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas
                                                          Court, Case No. 09 DRB 57.

JUDGMENT:                                        Affirmed.

APPEARANCES:
For Plaintiff-Appellee:                         Attorney Costa D. Mastros
                                                          Suite 1210, Bank One Building
                                                          401 Market Street, P.O. Box 608
                                                          Steubenville, OH  43952

For Defendant-Appellant:                   Attorney Francesca Carinci
                                                          Suites 904-911, Sinclair Building
                                                          100 North Fourth Street
                                                          Steubenville, OH  43952

JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Gene Donofrio

                                                          Dated:  December 15, 2011

DeGenaro, J.

{¶1} Defendant-Appellant, Thomas David Gilson, appeals the August 30, 2010 judgment of the Harrison County Court of Common Pleas granting a divorce between him and Plaintiff-Appellee, Shirl Ann Gilson. Thomas challenges the trial court's award of spousal support, and his argument is meritless. The trial court's spousal support award of $300 per month for seven years was reasonable; the trial court analyzed the statutory factors at length and based its award upon those factors. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} Thomas and Shirl were married on October 27, 1984. On August 9, 2009, Shirl filed a complaint for divorce. Thomas answered, and the parties submitted affidavits of expenses, income and other financial disclosures. Neither party had any substantial post-secondary education. At the time of divorce, the parties' incomes were comparable. Thomas worked for Asplundh, a tree-trimming company. In 2009, he had a gross income of $31,988; in the two preceding years Thomas earned $29,004 and $39,871, respectively. Thomas' income could vary depending on weather conditions.

{¶3} In 2009, Shirl, a waitress, had a gross income of $35,485, and in the two preceding years, Shirl earned $29,855 and $33,750 respectively. Shirl testified that these figures might not include quite all of her tips, since tips were reported by her employer as a percentage of sales. On a busy week, she could receive up to $100 more in tips than what was reported on her paystub, however she also had to tip out support staff a percentage of her tips, and sometimes her actual tips were less than what was reported on her paystub. Via a post-trial affidavit, Shirl averred that as of June 6, 2010, while her paystub reported her tips as $7,225, the approximate amount she had actually received year-to-date was slightly higher at $7,500. Shirl had health insurance coverage through Thomas' employer. No health or retirement benefits were offered by her employer.

{¶4} During the 25-year marriage, Shirl had a more consistent work history, and typically earned more than her husband. However, immediately prior to the divorce, during his four years at Asplundh, Thomas' income began to surpass Shirl's. In addition,

Thomas was able to contribute to a 401(k), with 3% employer matching, meaning he would begin to accrue substantially greater retirement benefits immediately following the divorce.

{¶5} The parties did not accumulate any significant assets or equity during the marriage. There were several vehicles of limited valued, a modular home valued at $58,500, with $55,924.12 remaining on the mortgage, and assorted marital personal property. The parties agreed to fund their son's college education and Shirl took out loans to do so. At the time of the divorce, the student loan debt totaled $55,693.91, with a monthly payment of $649.08.

{¶6} After the complaint was filed and upon Shirl's request an ex parte no-contact order was issued. On September 30, 2009, the court issued temporary orders pursuant to an agreement between the parties. Thomas was restrained from contacting Shirl during the pendency of the proceedings; Shirl was granted exclusive use of the marital home and an automobile. The court ordered the parties to evenly split the $559 per month mortgage payment, along with a $115 monthly payment towards a bank overdraft. Shirl was to be responsible for making those payments and Thomas was ordered to pay Shirl $337 per month for his share. Shirl was ordered to pay the utilities and Thomas his monthly truck and motorcycle payments. This judgment also contained mutual restraining orders.

{¶7} The final divorce hearing was held on June 9, 2010. Both parties' testified and introduced exhibits. At the conclusion of testimony, the court ordered Shirl to file a copy of her 2009 tax return; submit a paystub from within the last 30 days; and to submit an affidavit as to any wages and/or expenses to date in 2010 which were not included in her pay stub. The court ordered Thomas to submit his 2009 tax return; submit a paystub from within the last 30 days; and to submit a statement as to the value of his 401(k) benefits through June 9, 2010. The parties were also ordered to submit a valuation of their coin collection, along with written closing arguments.

{¶8} On August 30, 2010, having received the requested documents, the trial court issued a judgment entry, including findings of fact and conclusions of law, granting a

divorce between the parties. Among other things, the court divided the marital assets and debts, and Shirl was awarded the marital residence. To completely equalize the marital property division, the court found that Shirl owed Thomas $2,263. However, Thomas had a $2,022 arrearage from the temporary orders, because he had failed to make his share of the mortgage/overdraft payments on several occasions. The court ordered that Thomas would receive credit for the difference which amounted to $241.

{¶9} A notable marital debt was the student loans, which Shirl had taken out in her name, pursuant to an agreement with Thomas, to fund their son's college education. At the time of the divorce, the balance on these loans to Sallie Mae totaled $55,693.91, with a monthly payment of $649.08. The court concluded that this entire amount was marital and ordered Thomas to remit $325 per month to Shirl each month for these loans and ordered Shirl to provide Thomas with a yearly accounting of her payments to Sallie Mae.

{¶10} After considering the R.C. 3105.18 factors, the court awarded Shirl spousal support in the amount of $300 per month for seven years. The court ordered that the support would terminate upon death of either party or upon remarriage of Shirl or the establishment of a relationship of cohabitation between Shirl and any unrelated adult. The court retained jurisdiction to modify spousal support.

## Spousal Support

{¶11} In his sole assignment of error Thomas asserts:

{¶12} "The trial court abused its discretion by making an inequitable award of spousal support."

{¶13} R.C. 3105.18 governs the calculation of spousal support. A trial court is vested with discretion in awarding and determining the amount of spousal support, and its decision will not be reversed on appeal except upon a showing of abuse of discretion. *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of judgment; rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶14} Thomas asserts that the trial court abused its discretion by awarding spousal support for Shirl in the amount of $300 per month for seven years. He contends that this improperly shifted the burden of funding Shirl's health insurance coverage entirely onto him. However, the trial court had other reasons, in addition to the health insurance issue, for awarding the support to Shirl. In the divorce decree, the court set forth its reasoning underlying the award in detail, analyzing each of the statutory factors in turn. While the court found that many of the factors were equal (e.g., the parties had comparable incomes, age, and health), the court's rationale behind the spousal support award had three main components, only one of which was Shirl's lack of health insurance coverage.

{¶15} First, the court noted that Thomas would begin to accrue substantially greater retirement benefits than Shirl immediately following the divorce. Indeed, Thomas' employer offered a 401(k) program with 3% matching, while Shirls' employer offered no 401(k) or other retirement plan. Second, the court carefully considered the health insurance issue:

{¶16} "As a consequence of the divorce, Wife will lose her health and hospitalization coverage through her Husband. Wife could maintain her coverage through COBRA, however, the COBRA information was not provided to the Court and those premiums are generally high. Wife has no other health and hospitalization available to her at this time, and working in the restaurant industry, it is not likely that Wife will be able to receive health insurance through her employment at any time in the foreseeable future. Wife's only other option for health insurance would be to purchase insurance available on the private market where monthly payments would likely cost $300 or more."

{¶17} Third, the court noted that while it categorized the student loan debt as marital and ordered Thomas to pay half of the monthly payment to Shirl, that since Shirl was the sole borrower on the promissory notes and the only one legally obligated to pay, she could be subject to garnishment and other proceedings if Thomas failed to make the monthly payment to her: "As a practical matter, Wife's disposable income is reduced by

the payment of $649.08 to Sallie Mae each month. Although Mr. Gilson has been ordered to pay one-half of this payment each month, he has already demonstrated that he has not always complied with the orders of the Court. Therefore it is necessary to provide some additional financial security to Wife."

{¶18} With regard to this third point, Thomas contends that the record is devoid of evidence that he failed to comply with court orders. This is inaccurate; the divorce decree notes Thomas failed to comply with the temporary orders, creating an arrearage of $2,022 by the conclusion of the proceedings.

{¶19} Alternatively, Thomas contends that the trial court was impermissibly punishing his past noncompliance by ordering spousal support, citing to *McCree v. McCree*, 7th Dist. No. 08 MA 109, 2009-Ohio-2639, which is factually distinguishable. In *McCree*, this court held that because an arrearage remained on the spousal support order, that was not justification for refusing to initiate a downward modification of spousal support where a substantial change in circumstances had occurred. Id. at ¶55. Here, the trial court's spousal support award was not intended to punish Thomas for his past failure to comply with court orders. Rather it simply accounted for financial realities, namely that Shirl was personally burdened by the student loan debt and would have to rely upon Thomas to pay his share every month. The trial court reasonably considered Thomas' past behavior in a similar situation, i.e., his failure to pay his half of the mortgage and overdraft debt during the pendency of the proceedings.

{¶20} With regard to the health insurance issue, Thomas insinuates that the trial court should have split Shirl's approximate monthly insurance cost, i.e., $300, between the parties, thereby reducing Thomas' spousal support obligation to $150 per month. Although this option certainly would have been reasonable, $300 per month for a limited duration, i.e., seven years, is also reasonable. Although this court might have reached a different spousal support determination, under an abuse of discretion review we may not substitute our judgment for that of the trial court where its judgment was reasonable. See *White v. White*, 7th Dist. No. 02-CO-74, 2003-Ohio-3279 at ¶37; *Blakemore*, 5 Ohio St.3d at 21.

**{¶21}** In sum, the trial court did not abuse its discretion with regard to its spousal support award.  Accordingly, the judgment of the trial court is affirmed.

Waite, P.J., concurs.

Donofrio, J., concurs.