[Cite as *Downie v. Montgomery*, 2013-Ohio-5552.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CANDICE DOWNIE, et al., | ) | |
| | ) | CASE NO. 12 CO 43 |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| SCOTT E. MONTGOMERY, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Common Pleas Court, Case No. 2011 CV 356.

JUDGMENT: Affirmed.

APPEARANCES:
For Plaintiffs-Appellants: Attorney Ilan Wexler
Anzellotti, Sperling, Pazol & Small Co.
21 North Wickliffe Circle
Youngstown, OH 44515

For Defendants-Appellees: Attorney William Scott Fowler
Comstock, Springer & Wilson Co. LPA
100 Federal Plaza East, Suite 926
Youngstown, OH 44503

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: December 13, 2013

DeGenaro, P.J.

{¶1} Plaintiffs-Appellants Candice and James Downie appeal the September 13, 2012 judgment of the Columbiana County Court of Common Pleas denying their motions for judgment notwithstanding the verdict and for a new trial, following a jury verdict in favor of Defendants-Appellees, Scott Montgomery and Nickolas Perez. On appeal, Appellants assert the trial court erred by denying these motions.

{¶2} Upon review, Appellants' arguments are meritless. The trial court properly denied the motion for JNOV as there was sufficient evidence presented at trial so as to create a jury question regarding proximate cause. The trial court did not abuse its discretion in denying the new trial motion as the jury did not lose its way and the verdict was not manifestly unjust. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} On May 22, 2010, Appellant Candice Downie was an invited guest at the home of Appellee Scott Montgomery and his partner Kelley Perez. While Scott and his stepson, Appellee Nickolas Perez, were arguing, Candice stepped between the two men and was knocked to the ground. Candice claims this injured her ankle.

{¶4} On May 17, 2011, Appellants filed a Complaint against Appellees for negligence and loss of consortium. On June 16, 2011, Appellees filed an Answer, in which they asserted that Candice's negligence was the sole or contributing cause of her injuries. They also alleged that Candice voluntarily entered into a course of conduct with knowledge of all the attendant risks and circumstances and thereby assumed the risk of any and all of her injuries and damages. Additionally, they claimed that if any of Candice's medical bills have been paid by third parties having subrogation rights against Appellees, Candice failed to join them to the lawsuit as required. Finally, Appellees contended that Candice failed to mitigate her damages.

{¶5} On July 27, 2011, Appellants filed an Amended Complaint that also named Medical Mutual Services as an involuntary party plaintiff. After various filings, Medical Mutual was dismissed with prejudice on April 5, 2012.

{¶6} On May 1, 2012, Appellees filed a motion for summary judgment, in which they argued under a primary assumption of the risk theory that Candice assumed the risk

of injury by her actions, thereby extinguishing any liability on the part of Appellees. Appellants filed a brief in opposition, and on May 17, 2012, the court denied the motion for summary judgment.

{¶7}   The case proceeded to jury trial on May 21, 2012.  Appellees' theory of the case was that Candice injected herself into a heated argument and therefore assumed the risk of getting injured.  Alternatively, they claimed that Candice injured herself when she fell upon returning home that night, and that this fall was the proximate cause of her ankle injury.

{¶8}   Candice testified that she ran into Kelley and Kelley's daughter, Natalie Perez, on the day of the incident and they invited her to their house.  Subsequently, upon learning that Nick and another boy had gotten into a car accident, Candice offered to go to the hospital with Kelley so she could take the boys to get checked out.  On the way home from the hospital Nick began arguing with his mother because Nick had initially lied about the cause of the accident.  Upon their return to Scott and Kelly's house, the argument continued, with Scott becoming involved.  Scott offered Candice a ride home; however, she refused because he seemed drunk to her.  She asserted that Scott had a history of drinking.

{¶9}   The situation between Nick and Scott began to escalate and Nick started punching the side of Scott's jeep.  Tempers flared.  In an attempt to diffuse the situation, Candice said that she then stepped between Scott and Nick and told them to "please just stop."  Then, "the next think [she] knew, [she] was hit from behind."  She testified that after this collision she could not put any weight on her foot and she thought it was sprained.

{¶10}  Kelly offered to take Candice to the emergency room, but Candice declined, preferring to go home and have Jim take her.  Kelley gave Candice a ride home; Nick and Natalie rode along with them.  On the way, Candice told Kelley that if she did decide to get treatment for her ankle injury, she would say that the injury was caused by tripping over her dogs.

{¶11}  Candice testified that when she arrived home, she had to hop on one leg to

the door of her apartment. Once there, Kelley began screaming at Jim. Jim was holding one of their dogs, who was barking. Candice said she was in pain once she got to the threshold and leaned on Jim, who put her on the couch. He closed the door to make sure the dogs could not get out. Jim told Kelley to leave and she did.

{¶12} Jim later took Candice to the hospital for treatment and Candice said she told hospital personnel that her injury was the result of tripping over her dogs. Initial emergency room records indicate she injured herself while walking her dogs. However, after Candice was released from the hospital, she grew upset over lying about the cause of her injury. She discussed the matter with her husband, who told her to "make it right." According to Candice, she then called the police department to report to them what happened. However, no such police report was offered or admitted into evidence. Candice said she later explained to her doctor that she did not trip over her dogs. Candice testified that she lied about the true cause of her injury because she promised Kelley she would do so and she did not want to see Nick get in trouble.

{¶13} Jim, Candice's husband, testified that when Candice returned to their apartment after the incident she was limping. He testified that Kelley was screaming at him upon their arrival. Jim testified that he was holding the larger of his two dogs, a Border Collie, so that it did not run away. At this point, he grabbed Candice to bring her into the apartment. Once he did this, he set the dog down, screamed at Kelley to get out of his apartment, and closed the door. Jim testified that after he set the dog down, he did not see what happened to his wife.

{¶14} Kelley testified to what she observed of the altercation between Scott, Nick and Candice. She said that after Nick punched Scott's jeep, Scott and Nick, who were being held back by Natalie and Kelley respectively, were released and headed toward each other. Kelley stated that, at the last second, Candice stepped between the two men. Then, Nick collided into Candice, who was facing Scott, knocking all three individuals to the ground on top of each other.

{¶15} Kelley testified that after the fall, Candice was limping but said that her ankle was just sprained. Kelley, accompanied by her son and daughter, drove Candice back to

the Downie apartment. Kelley testified that she offered to take Candice to the hospital, but Candice refused. Kelley denied that she and Candice discussed what Candice planned to tell doctors regarding the cause of her ankle injury.

{¶16} Kelley's testimony as to what occurred upon arrival to the Downie apartment differs significantly from that of Jim and Candice. Kelley testified that the dog Jim claimed he was holding was actually hooked on a cable to keep it in the house. She claimed this cable became wrapped around Candice's ankle, which caused Candice to fall and injure her ankle. At this point, Kelley claimed she pulled the dog off of Candice. Kelley said that Jim then grabbed Candice and threw her at least ten feet across the room onto a couch after she had been knocked over by the dog.

{¶17} Nick, who was 18 years old at the time of the incident and 20 years old at the time of trial, testified, confirming that on the car ride home from the hospital he got into an argument with his mother. He said once they returned home from the hospital, Scott involved himself in the argument. The remainder of his testimony with regard to the collision between himself, Scott and Candice, was substantially similar to Kelley's testimony. Namely, he confirmed that Candice jumped in the middle when he and Scott "were going at each other."

{¶18} Nick rode with his mother and sister to take Candice home. He denied hearing Candice and Kelley talk about what Candice would say when she got to the hospital. He remained in the car while they went to the door of her apartment and said Candice was limping. Nick testified that he saw Jim, who was yelling, open the door and saw the dog inside on a cable. He saw the cable wrap around Candice's ankle, causing her to fall. During trial, he said Candice "fell face first into her house." He conceded that during depositions, he testified that he she fell straight down "on her butt," but said that testimony was a mistake.

{¶19} Natalie, who was 19 years old at the time of trial, witnessed the altercation between Scott and Nick; initially, she was holding Scott, and Kelley was holding Nick. She explained: "And then after Nick had hit the Jeep, or whatever, things were getting pretty out of hand. And we couldn't hold them back anymore. And so at that point, when

it was too out of control we had to step back. And Candy [Candice] stepped in the middle of it at the last minute and everybody fell over." Natalie said that after the incident, Candice complained that her ankle hurt but did not want to go to the hospital.

**{¶20}** Natalie corroborated Kelley's version of events as to what occurred on their trip to the Downie apartment, as well as what happened once they got there. She said she never heard Kelley and Candice discuss what Candice would say when she got to the hospital; in fact, she recalled that Candice stated she was not going to the hospital because her ankle injury was not that bad. According to Natalie, Candice "said she was fine" afterwards.

**{¶21}** Once at the Downie apartment, Natalie stated she and her mother accompanied Candice to the door; Nick remained in the car. She said once the apartment door opened she saw a dog on a red cable leash. She said the cable became tangled around Candice's ankle, causing Candice to fall. Amid the yelling, Jim, who was angry, picked Candice up and threw her about 10 feet across the room and onto a couch.

**{¶22}** Scott testified that he did in fact inject himself into the argument between Nick and Kelley, making him the target of Nick's anger. As things became more heated, Natalie held him back and Kelley held Scott. Nick punched Scott's jeep, making Scott even more upset. Shortly thereafter, Natalie let go of him and he and Nick started coming at each other. When there was about six to eight feet between them, Candice got in the middle, and the three of them collided.

**{¶23}** Video depositions of two of Candice's treating physicians, Dr. John Paumier and Dr. Joseph Francisco, Jr., were played to the jury to explain Candice's injury and the treatment she received for the injury. In addition, Candice's medical records concerning her injury were admitted into evidence.

**{¶24}** Candice arrived at the hospital emergency department late in the evening of May 22, 2010. According to her chart, Candice had "marked pain" with movement of the ankle joint; that the ankle was "exquisitely tender" to palpation and that the exam was consistent with a "very significant area of contusion and soft tissue damage." Candice complained of 10/10 level "excruciating" pain upon admission and was administered

intramuscular pain medication. X-rays of the ankle were ordered.

{¶25} Dr. John Paumier, an orthopedic surgeon, was called to the emergency department to treat Candice. After reviewing the x-rays and examining Candice, he diagnosed her with a left trimalleolar ankle fracture and dislocation. According to Dr. Paumier, the x-rays revealed "comminution fragments," meaning Candice's ankle was fractured into many small pieces.

{¶26} Candice was discharged from the emergency department in the very early morning of May 23, 2010. At that time, her pain level was 8/10. She returned to the hospital on May 24, 2010 for Dr. Paumier to perform surgery to repair her ankle. Dr. Paumier also handled Candice's treatment following the surgery.

{¶27} Significantly, Candice's explanation of the cause of her injury changed during the course of her medical treatment. According to medical records, when her ankle was x-rayed she explained the injury was caused when she "fell down steps while walking a dog." At trial, Candice recalled that she initially told medical personnel that she tripped over her dogs. In his initial report, Dr. Paumier states that Candice told him that she injured her ankle when she "fell down three steps."

{¶28} Then months later, "at the conclusion of the healing process * * * on or about September 2nd, 2010," the same day Appellants' attorneys requested medical records from Dr. Paumier, Candice phoned Dr. Paumier to tell him that her injury had been caused by "an altercation between stepfather and stepson where she basically got in the middle of the two, [and] was tackled by the stepson." When asked during his deposition, Dr. Paumier stated that Candice's injury could have been caused by either one of the scenarios presented to him by Candice.

{¶29} Dr. Joseph Francisco, Jr., a podiatrist, began treating Candice approximately a year after the incident in May 2011, after she complained of chronic ankle pain that limited her mobility and prevented her from carrying out her normal day-to-day lifestyle prior to the injury. Dr. Francisco recommended surgery to remove two of the screws in Candice's ankle, which had been placed there due to the fracture. Dr. Francisco referred Candice to a different doctor who performed the surgery. Dr.

Francisco also testified that the arthritis that Candice had developed was more likely than not related to the fractured ankle. Numerous exhibits were admitted concerning Candice's medical treatment by both doctors.

{¶30} Appellees made two motions for directed verdict, first after the close of Appellants' case, and then at the close of their own case, both of which were overruled. The trial court gave the jury charge, which included instructions about comparative negligence.

{¶31} Following deliberations, the jury returned with a General Verdict in favor of Appellees. The verdict received six votes. The jury answered yes, with seven votes, to Interrogatory A, which asked "Was Defendant Scott Montgomery negligent?" Seven jurors also answered yes to Interrogatory B, which asked "Was Defendant Nicholas Perez negligent?" Six jurors answered no to Interrogatory C, which asked "Was the negligence of Defendant Scott Montgomery or Nicholas Perez a direct and proximate cause of the injury to Plaintiff Candice Downie?"

{¶32} We can glean from the trial court's oral instructions to the jury that there were additional interrogatories submitted to them aside from Interrogatories A, B, and C. However, for reasons unknown, the additional unsigned interrogatories were not returned to the trial court as instructed and thus were not included in the trial court record. Significantly, counsel declined the trial court's offer to inspect the interrogatories or to poll the jury.

{¶33} On June 5, 2012, judgment was entered in favor of Appellees.

{¶34} Appellants filed a motion for JNOV on June 19, 2012, as well as an alternative motion for a new trial. Appellants argued the jury erred in their decision on proximate cause due to a complete lack of evidence suggesting Candice was not injured in the original collision and fall described in the Complaint. Appellants also asserted that the questions of whether there was comparative negligence or whether additional injuries were caused when Candice allegedly fell over her dogs are irrelevant to the issue of proximate cause.

{¶35} On July 6, 2012, Appellees filed a brief in opposition. They argued that

competent, credible evidence supported the jury's finding that their negligence was not the proximate cause of Candice's injury.

**{¶36}** On August 20, 2012, Appellants filed a supplemental brief in support of the motion. The brief included specific instances of testimony and a portion of Appellees' closing argument which supported Appellants' assertion in their original motion for JNOV/ motion for a new trial.

**{¶37}** On August 23, 2012, Appellees filed a supplemental brief in opposition to the motion for JNOV/motion for a new trial. They maintained their argument that competent, credible evidence supported the jury's decision. They also argued that the jury's finding of negligence but not proximate cause demonstrated the jury's belief that Candice was solely responsible for her injuries.

**{¶38}** On September 13, 2012, the court denied Appellants' motion for JNOV/ motion for a new trial. At this time, the court also denied a motion for an oral hearing, which had been made on August 24, 2012. The court concluded that reasonable minds could come to different conclusions based on the evidence. The court noted that at least one witness testified that Candice claimed she was not injured as a result of being knocked to the ground at the Montgomery household and further that Candice refused immediate medical attention.

### Motion for JNOV and New Trial

**{¶39}** In their sole assignment of error, Appellants argue:

**{¶40}** "The Trial Court erred in denying Plaintiff's Motion for Judgment Notwithstanding the Verdict as all of the testimony and evidence indicate that the Plaintiff/Appellant suffered some degree of injury during the altercation between the Defendants thus rendering the Jury's determination on the issue of proximate cause against the manifest weight of the evidence."

**{¶41}** Although Appellants only reference the JNOV ruling in their assignment of error, some of their substantive arguments also attack the trial court's ruling on the new trial motion. For instance, they raise arguments concerning the weight of the evidence, even though manifest weight is not a proper basis for a JNOV motion. *See Dixon v.*

*O'Brien*, 7th Dist. No. 12 MA 19, 2013-Ohio-1429, ¶21-22.

**{¶42}** In the trial court, Appellants filed one motion which sought JNOV and alternatively a new trial, which the court disposed of in one judgment entry, from which Appellants appealed. Since the standard of review and the applicable law for JNOV and new trial motions are distinct and despite the fact that Appellants fail to articulate these differences in their brief, we will address each ruling separately.

### *JNOV*

**{¶43}** A trial court must grant a motion for JNOV pursuant to Civ.R. 50(B) if, construing the evidence most strongly in favor of the party against whom the motion is directed, it finds that upon any determinative issue reasonable minds could come to but one conclusion based upon the evidence, and that conclusion is adverse to the non-moving party. *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 137, 447 N.E.2d 1145 (1985). On the other hand, if reasonable minds could reach different conclusions, the motion must be denied. *Osler v. Lorain*, 28 Ohio St.3d 345, 504 N.E.2d 19 (1986).

**{¶44}** When performing this analysis a court shall neither weigh the evidence nor evaluate the credibility of witnesses. *Malone v. Courtyard by Marriott L.P.*, 74 Ohio St.3d 440, 445, 659 N.E.2d 1242 (1996). "Rather, the court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?" *Id.* A trial court's ruling on a motion for JNOV is reviewed de novo. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶4.

**{¶45}** Appellants claim that every witness with personal knowledge of the incident testified that Candice suffered an injury at the scene, and further that Appellees essentially conceded proximate cause at trial. Thus, reasonable minds could only conclude that Appellees' negligence was the proximate cause of Candice's injury.

**{¶46}** Appellants are incorrect that Appellees conceded proximate cause at trial. Although they quote a portion of defense counsel's closing arguments in an attempt to demonstrate otherwise, defense counsel was merely stating that Appellants were entitled to damages *if* they found Candice less than 50% negligent. The trial court correctly found

in its judgment entry that Appellees never conceded proximate cause and that the evidence, jury instructions and jury interrogatories placed the issue of proximate cause squarely before the jury for its consideration.

{¶47} Viewing the evidence in the light most favorable to Appellees reasonable minds could come to different conclusions about the outcome of the case. There was testimony about two different potential causes of Candice's injury, namely the collision between Scott and Nick, *or* Candice tripping over a dog cable upon her return home. Candice did not seek immediate medical treatment after the collision incident and according to Natalie, Candice stated that she was "fine" afterwards. Further, when Candice did finally seek medical treatment she initially told hospital personnel that she hurt her ankle when she tripped over her dogs, and then later told Dr. Paumier she had fallen down three steps.

{¶48} Thus, based on all of the above, the trial court's denial of JNOV was proper.

### New Trial Motion

{¶49} Civ.R. 59(A) provides several grounds upon which a party may base a motion for new trial. Applicable to this appeal is subsection (6) which involves manifest weight; specifically that the jury verdict is not sustained by the weight of the evidence. Civ.R. 59(A)(6). Regardless of the subsection, "the purpose of Civ.R. 59(A) is to empower the trial court to prevent a miscarriage of justice." *Frazier v. Swierkos*, 183 Ohio App.3d 77, 2009-Ohio-3353, 915 N.E.2d 724 (7th Dist.), ¶8, citing *Malone v. Courtyard by Marriott L.P.*, 74 Ohio St.3d 440, 448, 659 N.E.2d 1242 (1996).

{¶50} In contrast to a JNOV ruling, a trial court's decision to overrule a motion for a new trial is reviewed for abuse of discretion. *Mannion v. Sandel*, 91 Ohio St.3d 318, 321, 744 N.E.2d 759 (2001). An abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough. *See Bergman v. Bergmann*, 2d Dist. No. 25378, 2013-Ohio-715, ¶9; *Hall-Davis v. Honeywell, Inc.*, 2d Dist. Nos. 2008 CA 1, 2008 CA 2, 2009-Ohio-531, ¶35.

{¶51} Appellants assert that the trial court erred in determining that there was

sufficient competent evidence for the jury to conclude that the negligence of Appellees was not the proximate cause of Appellants' damages, and rely on *Hoschar v. Welton*, 7th Dist. No. 06 CO 20, 2007-Ohio-7196 and *Enter v. Fettman*, 5th Dist. No. 2005CA00023, 2005-Ohio-5525, in support of their argument.

**{¶52}** In *Hoschar*, the plaintiff filed suit as a result of personal injuries he sustained from a motor vehicle accident. The defendant stipulated to her own negligence at trial, but she disputed that the plaintiff's alleged injuries resulted from the accident. The defendant extensively cross-examined the plaintiff's medical expert and challenged plaintiff's and the doctor's credibility. However, the defendant did not dispute the plaintiff's emergency medical treatment, diagnoses, or transport arising from the collision. Despite this, the jury rendered a defense verdict and awarded the plaintiff no damages. The trial court denied the plaintiff's new trial motion and the plaintiff appealed. *Id.* at ¶1-3.

**{¶53}** This court reversed and remanded for a new trial, explaining as follows:

> In reviewing all of the relevant cases and in careful review of the record, here, we must conclude that the evidence in this case combined with the jury's question [during deliberations, specifically: "If we rule in favor of the defendant can we still compensate to cover a portion of the medical expenses?"] reveal that the jury lost its way when it failed to award Appellant any compensation for his uncontested emergency treatment and transport on the day of the accident. * * * [L]iability was admitted and there was undisputed evidence of some resulting damage. A reasonably prudent person in an accident of significant force would have sought emergency treatment * * * While Appellee certainly contested the necessity of [one of the doctor's] treatment in its entirety, and was successful in so doing, at no time did Appellee contest the necessity or appropriateness of Appellant's emergency transport or emergency care. Thus, we find that the trial court abused its discretion in failing to order a new trial on this issue pursuant to Civ.R. 59(A)(6).

*Id.* at ¶37, 42.

**{¶54}** In *Enter*, the plaintiff appealed the trial court's denial of his motion for a new trial, claiming that the jury erred in finding that the plaintiff's injuries were not proximately caused by the defendant's negligence. There, defense counsel acknowledged in his opening statement that the plaintiff suffered some injury from the accident. Defense counsel also conceded liability and suggested a minimal damage award in closing argument. Despite this, the jury awarded the plaintiff no damages. *Id.* at ¶3, 4, 27. The Fifth District concluded that the jury clearly lost its way, noting while the evidence may not have supported all of plaintiff's claimed injuries, it clearly demonstrated some injury and that this, coupled with defense counsel's concessions, warranted a new trial. *Id.* at ¶70.

**{¶55}** As Appellees correctly point out, both *Hoschar* and *Enter* are distinguishable from the present case, because in those cases liability for the accidents was not in dispute. By contrast, in this case, there were no stipulations as to liability; the issues of negligence, proximate cause and damages were all submitted to the jury for decision.

**{¶56}** Still, Appellants argue that the jury's verdict finding negligence but no proximate cause cannot be reconciled with the evidence presented at trial. Appellees counter with two rationales to explain the jury's verdict.

**{¶57}** First, Appellees argue that the jury could have concluded Candice was more than 50% negligent or that she impliedly assumed the risk of harm and was therefore essentially responsible for her own injuries. Under Ohio law, the defense of implied assumption of risk has been merged with comparative negligence. *See Anderson v. Ceccardi,* 6 Ohio St.3d 110, 451 N.E.2d 780 (1983).

**{¶58}** The problem with this theory lies in the state of the record before us. Any interrogatories concerning comparative negligence that may have been presented to the jury are not a part of the trial court record and consequently, not part of the record on appeal.

**{¶59}** As part of its jury instructions, the trial court summarized the relevant issues

for the jury as follows:

In this case Plaintiff, Candice Downie, claims that on May 22nd, 2010, Defendant, Scott Montgomery and Nicholas Perez, negligently caused her personal injury. Plaintiff James Downie claims that the Defendants' negligence caused him to sustain a loss of his wife's consortium and companionship. Defendants Montgomery and Perez deny that they were negligent in causing injury or damage to the Plaintiff and further raise the affirmative defenses that the Plaintiff Candice Downie was herself negligent or that she impliedly assumed the risk of her own injury.

This leaves for your decision the disputed issues which are summarized as follows: Were either Defendant Montgomery or Perez negligent? If so was the negligence of either Defendant a proximate cause of any injury or damage to the Plaintiffs? Was Plaintiff, Candice Downie, negligent in any respect or did she impliedly assume the risk of her own injury? If so, did Candice Downie's own negligence or implied assumption of the risk proximately cause injury or damage to the Plaintiffs? What percentage of negligence, if any, do you attribute to the Defendants and to Plaintiff Candice Downie respectively? If you find these issues in favor of the Plaintiffs you will also determine a sum of money that will fairly and reasonably compensate them for their injuries and damages.

{¶60} Both sides submitted proposed interrogatories prior to trial; however, neither versions were used as written. While off the record during a break following closing arguments, the trial court apparently edited the interrogatories , "[t]he other matter is over the last hour and a half through the noon hour we did make some changes to the jury - - proposed jury instructions and jury interrogatories. I have given a final version to counsel. It is my intention to read those, essentially verbatim, to the jury and then provide a written copy to them for their use as well."

{¶61} Although at least three interrogatories were presented to the jury, only one

interrogatory was read verbatim in open court:

At this point, ladies and gentlemen, I want to give you some instructions on how to complete the interrogatories.

All right, interrogatories are simply questions that you will have in the jury room with you.

You will be given written questions called "Interrogatories." The purpose of the jury interrogatories are to test the General Verdict. It is important that they are filled out correctly and in a consistent manner. You will start with Interrogatory A.

Interrogatory A asks, "Was Defendant Scott Montgomery negligent?" Then it instructs you to circle your answer in ink, yes or no and then it instructs you that at least six jurors must sign in ink. And there are blank spaces on each interrogatory for signatures.

At least six jurors must agree on the answer to Interrogatory A. It can be more than six but it cannot be less than six. Each person agreeing to the answer must sign his or her name in ink on the lines provided at the bottom of Interrogatory A. The foreperson will circle the agreed upon answer even if the foreperson does not sign the interrogatory.

You must follow carefully the directions at the bottom of each interrogatory. The directions will instruct you on how to proceed depending on your answer. The directions will also tell you which of you may participate in answering an interrogatory, as well as what questions to answer and whether to sign the General Verdict for the Plaintiffs or the General Verdict for the Defendants. Again, an interrogatory is answered when at least six jurors agree. It may be more but it cannot be less. Each person agreeing shall sign his or her name in ink at the bottom of the interrogatory on the lines provided. If at least six jurors cannot agree on an answers [sic] the instructions direct you to report that fact to the bailiff.

The foreperson shall also have the duty of returning the interrogatories to the courtroom whether or not they are signed.

In order to conclude this case it is necessary that at least six members of the jury agree upon a general verdict. * * *

{¶62} Following deliberations, the jury returned with a General Verdict in favor of Appellees. The verdict received six votes. The jury answered yes, with seven votes, to Interrogatory A, which asked "Was Defendant Scott Montgomery negligent?" Seven jurors also answered yes to Interrogatory B, which asked "Was Defendant Nicholas Perez negligent?" Then six jurors answered no to Interrogatory C, which asked "Was the negligence of Defendant Scott Montgomery or Nicholas Perez a direct and proximate cause of the injury to Plaintiff Candice Downie?"

{¶63} We can glean from the trial court's oral instructions to the jury, quoted above, that there were additional interrogatories submitted to them aside from Interrogatories A, B, and C. The trial court's initial instructions outlining the issues in the case states that comparative negligence would be an issue for the jury to determine. The Revised Code requires interrogatories for that purpose. *See* R.C. 2315.34:

If contributory fault is asserted and established as an affirmative defense to a tort claim,* * * the jury in a jury action shall return a general verdict accompanied by answers to interrogatories, that shall specify the following:

(A) The total amount of the compensatory damages that would have been recoverable on that tort claim but for the tortious conduct of the plaintiff;

(B) The portion of the compensatory damages specified under division (A) of this section that represents economic loss;

(C) The portion of the compensatory damages specified under division (A) of this section that represents noneconomic loss;

(D) The percentage of tortious conduct attributable to all persons as

determined pursuant to section 2307.23 of the Revised Code.

**{¶64}** Here the jury would not have needed to complete the contributory fault interrogatories in light of its determination about proximate cause. However, any unsigned interrogatories should have been returned to the trial court following deliberations. The trial court did instruct the jury foreman that "[t]he foreperson shall also have the duty of returning the interrogatories to the courtroom *whether or not they are signed*."

**{¶65}** Yet for reasons unknown, any additional unsigned interrogatories were not returned to the trial court as instructed. Significantly, counsel declined the trial court's offer to inspect the interrogatories or to poll the jury.

**{¶66}** In light of the state of the record, we decline Appellees' suggestion that we should presume the jury must have concluded Candice was more than 50% negligent and therefore essentially responsible for her own injuries.

**{¶67}** However, Appellees proffer a second rationale for the jury's verdict: that the jury completely rejected Appellants' trial theory that Candice sustained the injury due to her involvement in the fight, instead believing the defense theory that the injury was caused by her tripping over her dogs upon her return home. We agree.

**{¶68}** We note from the outset that Interrogatory C asked the jury: "Was the negligence of Defendant Scott Montgomery or Nicholas Perez a direct and proximate cause of *the injury* to Plaintiff Candice Downie?" Appellants' theory of the case at trial was that the fight and ensuing collision between Appellees was the cause of *the injury*; i.e., the severe trauma to Candice's ankle that resulted in a dislocation and the ankle being broken into many pieces, necessitating several surgeries. Appellants completely disavowed any notion that Candice injured herself upon her return home.

**{¶69}** As the trial court correctly reasoned in its judgment entry, this case included the often conflicting testimony of several different witnesses. Further, resolution of this case came down to credibility determinations best made by the trier of fact. The jury could have reasonably determined that Candice was simply not credible based on her

inconsistent accounts of what happened that day.

{¶70} Candice provided at least three different stories to medical personnel regarding the cause of her injury. According to medical records, when her ankle was x-rayed upon admission to the emergency department, she explained the injury was caused when she "fell down steps while walking a dog." At trial, Candice recalled that she initially told medical personnel that she tripped over her dogs. In his initial report, Dr. Paumier states that Candice told him that she injured her ankle when she "fell down three steps." Then months later, "at the conclusion of the healing process * * * on or about September 2nd, 2010," *the same day Appellants' attorneys requested medical records from Dr. Paumier*, Candice phoned Dr. Paumier to tell him her injury had been caused by "an altercation between stepfather and stepson where she basically got in the middle of the two, [and] was tackled by the stepson."

{¶71} Candice claimed her she initially lied to hospital staff about the cause of her injury to protect her friend Kelley. She testified that she later had a change of heart and called police to report that her injury had been caused by her involvement in the fight between Appellees. Yet no such police report was offered or admitted into evidence. Candice did not change her story about what caused her injury to Dr. Paumier until months later when medical records were requested by her attorneys for this lawsuit. This creates serious credibility questions.

{¶72} Further, there was conflicting testimony by witnesses about what happened when Candice returned home after the fight. Kelley, Nick and Natalie all testified that while Candice was waiting to enter her apartment she was knocked down to the ground by her dog, which was tied to a cable. Although Candice and Jim deny that this happened, as explained above, Candice initially reported to hospital personnel that she injured her ankle by tripping over her dogs or when she fell while walking her dogs.

{¶73} There is competent, credible evidence demonstrating that Candice's fall upon returning home, and not her involvement in the fight between Nick and Scott, was the proximate cause of *the* injury. "The injury," per Appellants' theory of the case at trial was the severe injury to Candice's ankle that resulted in multiple fractures and required

surgeries to repair.  Accordingly, based on all of the above, the trial court did not abuse its discretion in overruling the new trial motion.

**Conclusion**

**{¶74}**  Appellants' assignment of error is meritless.  The trial court properly denied the motion for JNOV as there was sufficient evidence presented at trial so as to create a jury question regarding proximate cause.  The trial court did not abuse its discretion in denying the new trial motion as the jury did not lose its way and the verdict was not manifestly unjust.  Accordingly, the judgment of the trial court is affirmed.

Vukovich, J., concurs.

Waite, J., concurs in judgment only.