[Cite as *Bennett v. Bennett*, 2016-Ohio-462.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| FRIEDA L. BENNETT | ) | |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| | ) | CASE NO. 14 CO 8 |
| VS. | ) | |
| | ) | OPINION |
| BRIAN D. BENNETT | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas of Columbiana County, Ohio, Domestic Relations Division
Case No. 11 DR 197

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellant     Attorney Christopher Maruca
201 East Commerce Street, Suite 316
Youngstown, Ohio 44503

For Defendant-Appellee     Attorney Elise Burkey
200 Chestnut Avenue, NE
Warren, Ohio 44483

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: February 5, 2016

DeGENARO, J.

{¶1} Plaintiff-Appellant, Frieda L. Bennett, appeals the judgment of the Columbiana County Court of Common Pleas that adopted the magistrate's decision and granted a divorce between Frieda and Defendant-Appellee, Brian D. Bennett. On appeal, Frieda asserts that the trial court erred by failing to examine financial misconduct in the aggregate and by failing to properly calculate Brian's income for the purpose of spousal and child support. For the following reasons, Frieda's arguments are meritless. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶2} Brian and Frieda were married in September of 2001 and they have two minor children. The parties separated in February of 2011. During the marriage, Brian worked as the owner and operator of Bennett Construction. Brian used an accountant in keeping his construction company's records, and Frieda actively participated in Brian's company, including writing checks and providing information to the accountant. The other businesses the two parties engaged in were never profitable, one of which netted annual losses over $25,000.00 more than once.

{¶3} The magistrate found Brian's average income from 2009-2011 was approximately $18,958.33 per year. Frieda worked at Mountaineer Casino, Racetrack and Resort until her termination in August 2010. In January 2011, Frieda found another job but was unemployed as of August 2011, and remained so at the time of trial.

{¶4} The couple borrowed money from their respective families to help the businesses stay afloat and pay living expenses. Brian used money from the custodial account of the parties' two children to pay a business debt, and at some point Frieda became aware of this, and the debt payoff resulted in a tax refund to both Brian and Frieda. The money used from this account was never returned. At another time, Brian declined to enter into an oil and gas lease that would have provided additional income to the parties. The two parties later entered into a lease which Frieda contends was less profitable.

{¶5} In April 2011, Frieda filed for divorce. A trial was held before the

magistrate who issued a decision granting the parties a divorce. Pertinent to the objections and issues on appeal, the magistrate found that Brian did not commit marital waste by refusing to sign an earlier proposed oil and gas lease. The magistrate further found that both parties had "robbed Peter to pay Paul in order to support the lifestyle they previously enjoyed when the construction business was going strong." This included Frieda cashing in her 401K, borrowing from family and spending her inheritance money. And Brian also borrowed from family and cashed in the children's accounts. Regarding the parties' income the magistrate found:

> [Brian] is the self-employed owner of Bennett Construction, which was established prior to the marriage. No appraisals of Bennett Construction were submitted. The value of the business, other than tangible assets described herein, is $0.00. For child support purposes, the most current income information comes from 2011. In 2011 [Brian] had income of $15,039.00; in 2010 his income was less than minimum wage, so he is imputed minimum wage of $15,080.00; in 2009 his income was $18,623.00. The average of those three years is $18,958.33. His annual income for 2011 and 2009 was determined by taking his net profit as shown on line 31 of Schedule C [on joint income tax returns signed by both parties] and adding back depreciation claimed on line 13 of Schedule C. [Frieda] urges the Court to base [Brian's] current income on deposits made into the Bennett Construction account in 2012 (totaling approximately $155,000.00). The Court notes that approximately $45,000.00 of that total came from deposits out of an account [Brian] owns with his mother. The Court also notes that this argument ignores that [Brian] would have cost of goods and operating expenses to pay, which have historically significantly lowered the "gross profit" of his business according to the parties [sic] jointly filed tax returns from 2006-2011. The Court will not use the 2012 gross deposits as a basis for determining [Brian's] current income.

\* \* \*

[Frieda] is currently unemployed, but she is actively seeking employment. Her unemployment compensation has expired, and at this time she has no income. In the past she has earned in excess of $50,000.00 annually. She suffers from no disabilities, which would prevent her from obtaining full-time employment. For child support purposes she will be imputed minimum wage.

{¶6} After analyzing the statutory factors, the magistrate found spousal support was unwarranted for either party. Frieda was named residential parent of the parties' minor children, Brian was ordered to pay child support.

{¶7} The court initially adopted the magistrate's decision the same day, and both parties filed objections. Frieda argued, inter alia: 1) imputing minimum wage to Brian grossly minimized his income; 2) as a result of the minimum wage imputation, the magistrate failed to properly calculate spousal and child support payments; 3) it was marital waste for Brian to refuse to sign the oil and gas lease; and, 4) the magistrate erred by not awarding Frieda one-half the value of the children's accounts that were liquidated by Brian without her knowledge and consent, which were additional actions by Brian that supported a finding of financial misconduct.

{¶8} In a January 10, 2014 judgment, the trial court overruled all of Frieda's objections, finding that since there was no showing that Brian behaved in a manner that was either abusive or destructive in regarding the oil and gas lease, allegation of marital waste was unsupported. Regarding the children's custodial accounts, the trial court found:

Based on the record, even if no agreement existed regarding the use of the funds [withdrawn from the accounts], it is evident that at least a portion was withdrawn and used to pay some or all of the parties' tax liability that arose during the marriage, sometime after 2006. Ultimately the parties received a significant refund that was split equally by order

of the Court after the payment of taxes. Under this scenario FLB's request to be awarded 1/2 of the value of funds withdrawn from the custodial accounts is not supported by the record inasmuch as she benefited from the payment of her tax liability.

**{¶9}** The trial court further found that the magistrate's calculations were supported by the record and there was insufficient evidence to prove Brian had underreported his income on his tax returns or otherwise committed financial impropriety so as to support a higher figure.

**{¶10}** The trial court sustained one of Brian's objections involving his separate property claims, which are not at issue on appeal; all other objections were overruled. Accordingly, the trial court determined, after its independent review of the record and the facts and conclusions contained in the magistrate's decision, that the magistrate properly determined the factual issues and appropriately applied the law, except regarding two pieces of Brian's personal property, which are not at issue on appeal. In all other respects the trial court overruled the objections to the magistrate's decision.

## Financial Misconduct Analysis

**{¶11}** In her first of two assignments of error, Frieda argues:

> The trial court abused its discretion and committed reversible error by examining the instances of financial misconduct and spoliation solely on an individual basis instead of the aggregate.

**{¶12}** An appellate court reviews a trial court's decision regarding financial misconduct for an abuse of discretion. *Carpenter v. Carpenter*, 7th Dist. No. 06-NO-331, 2007-Ohio-1238, ¶ 14. An abuse of discretion "means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *Downie v. Montgomery*, 7th Dist. No. 12 CO 43, 2013-Ohio-5552, ¶ 50. "The decision of a trial

court will not be reversed as being against the manifest weight of the evidence if the trial court's judgment is supported by some competent, credible evidence." *DeWitt v. DeWitt*, 3d Dist. No. 9-02-42, 2003-Ohio-851, ¶ 10.

**{¶13}** R.C. 3105.171(E) defines financial misconduct as, among other things, "dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets." "Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." *Gentile v. Gentile*, 8th Dist. No. 97971, 2013-Ohio-1338, ¶ 55. If financial misconduct is found by the trial court, R.C. 3105.171(E) allows for a distributive award or a greater award of marital property to the offended spouse. *See* R.C. 3105.171(E). The offended party bears the burden of proving allegations of financial misconduct. *Ballas v. Ballas*, 7th Dist. No. 04 MA 60, 2004-Ohio-5128, ¶ 50. R.C. 3105.171(E)(3) has been interpreted so that there must be some wrong intent, or scienter. Further, the complaining party may not have unclean hands. *Ballas* at ¶48-53.

**{¶14}** Frieda identifies three alleged instances of financial misconduct: Brian's failure to sign an earlier oil and gas lease that would have proved more lucrative than the one the parties ultimately signed; Brian's act of cashing in the children's custodial accounts; and Brian's allegedly underreporting of his income. The income issue is the subject of the second assignment of error and will be discussed therein.

**{¶15}** The trial court's analysis regarding the oil and gas lease is thorough. Frieda argued in her objections that it was marital waste for Brian to refuse to sign an oil and gas lease in a timely fashion. The trial court found the record did not support a finding that Brian acted in an "abusive or destructive" manner towards the signing of the lease, further finding:

> There is no evidence that failure to sign the lease was somehow beneficial or profitable to BDB [Brian] and detrimental to FLB [Frieda.] Instead both parties lost equally. There is no evidence in the record demonstrating disobedience with a court order regarding the Chesapeake lease. Rather, the evidence supports that the parties

simply were at an impasse on how they should proceed.

**{¶16}** Regarding the children's custodial accounts, the trial court's analysis is also quite thorough, concluding that regardless of whether Frieda was aware of Brian's withdrawals, she ultimately benefited insofar as the money was used to pay some or all of the parties' prior tax liability resulting in a significant tax refund which the parties divided equally. Thus it was not necessary for the trial court to adjust Frieda's property award simply because Brian withdrew money from these accounts.

**{¶17}** Further, the record is replete with evidence that both parties spent money that they did not have to maintain an artificial lifestyle; both had inheritances that they spent during the marriage, among other issues. The magistrate as fact-finder determined the parties have "robbed Peter to pay Paul to support the lifestyle they previously enjoyed when the construction business was going strong, and the Plaintiff had a good job."

**{¶18}** In addition, Frieda has failed to provide any support for her argument that claims of financial misconduct must be viewed in the aggregate; she does not point to, and we do not find, any guiding authority mandating the manner in which a trial court will consider alleged actions that amount to financial misconduct. Plainly put, there is no basis for an argument alleging that the trial court acted improperly without citing authority showing that the court deviated from a standard. And regardless, here the trial court considered the evidence from a global stand-point and did not just look at each individual act.

**{¶19}** In sum, the trial court did not abuse its discretion with regard to the financial misconduct allegations. Accordingly Frieda's first assignment of error is meritless.

### Income Calculations

**{¶20}** In her second assignment of error, Frieda asserts:

The trial court abused its discretion and committed reversible error by failing to properly calculate Appellee/Husband's income.

{¶21} Frieda argues the trial court's child support award and its decision not to order spousal support were erroneous insofar as it used an improper income figure for Brian.

{¶22} An appellate court reviews matters of spousal support for an abuse of discretion. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). The decision to impute income to one or both parents in order to calculate support is also reviewed for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). An abuse of discretion "means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *Downie*, *supra*, at ¶ 50. A trial court has broad discretion when determining the amount of spousal support. *Gilson v. Gilson*, 7th Dist. No. 10 HA 03, 2011-Ohio-6640, ¶ 13.

{¶23} R.C. 3105.18 governs the calculation of spousal support. If a court deems that a spousal award is appropriate and reasonable, the amount is determined by applying the fourteen statutory factors listed in R.C. 3105.18(C). *Kennedy v. Kennedy*, 7th Dist. No. 2002 CO 09, 2003-Ohio-495, ¶ 16. The factors are as follows:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;
>
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
>
> (g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C).

{¶24} All of the statutory factors must be considered, and a trial court must "not consider any one factor taken in isolation." *Kennedy*, *supra*, at ¶ 32, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988).

{¶25} Revised Code Chapter 3119 governs child support, and when determining an appropriate amount, the trial court must calculate the income of both parents consistent with the statute. R.C. 3119.05. A parent that is unemployed or underemployed will be given potential income that may be imputed for purposes of income calculation. R.C. 3119.01(C)(5)-(11). The income of a parent for support purposes is equal to either gross income for a parent employed to full capacity, or the sum of gross income of the parent and any potential income. *See* R.C.

3119.01(C)(5). "Potential income is determined by considering all relevant factors, including the parent's education, skills, training, experience, and earning capacity; the availability of jobs and prevailing wages in the parent's geographic area; any mental or physical disabilities of the parent; the ages and special needs of the children; and whether evidence demonstrates that the parent can earn the imputed income." *Ramsey v. Ramsey*, 7th Dist. No.13 JE 17, 2014-Ohio-1227, ¶ 38.

**{¶26}** The first aspect of Frieda's argument centers on her allegations that Brian was minimizing or underreporting the income from his business, essentially an allegation of financial impropriety. However, Frieda has not demonstrated that any financial impropriety occurred. Ms. Archer, Brian's accountant, was familiar with both Brian and Frieda as an accountant for their joint tax returns and Brian's business and she found no apparent impropriety with regard to the financial records. Moreover, Brian's construction business profit fluctuated based on the demand for his work, and the parties lived beyond their means.

**{¶27}** Frieda's testimony at trial that Brian was hiding or underreporting income is not supported by any financial documentation. And the fact that Brian overstated his income on a credit application is not necessarily proof he was underreporting his income, but could merely show that he was trying to obtain a higher credit line. Thus, financial impropriety was not proven at trial.

**{¶28}** The trial court did not abuse its discretion in calculating Brian's income. The joint tax returns signed by both Brian and Frieda from 2009-2011 showed an average income of $18,958.33. No appraisals of Bennett Construction were submitted. Further, Frieda's argument that $155,000.00 in deposits were made in 2012 is not indicative of an income figure as this argument ignores the cost of goods and of operating expenses.

**{¶29}** The trial court's analysis of Frieda's objections regarding the income calculation for Brian was thorough and is supported by the record:

Heidi Archer, the parties' tax preparer testified at length. She has worked with BDB regarding his tax returns since 1995 and with the

parties regarding their joint tax returns the entire time of their marriage. BDB is a self-employed contractor. For the years 2009, 2010, and 2011 BDB had average income of $18,958.33 based upon the parties' jointly filed tax returns in evidence. For the years 2009 and 2011, BDB's annual income was determined by taking his net profits as shown on Line 31 of Schedule C and adding back depreciation claimed on Line 13 of Schedule C. The resulting amount is above the minimum wage rate of $15,080.00.  This comports with R.C, § 3119.01(C)(9)(a)-(b), and (13), which sets forth the method to establish self-generated income for purposes of child support,

FLB claims that using minimum wage for BDB grossly minimizes his income. However, courts typically require evidence of demonstrated financial impropriety before accepting this argument.

* * *

Such facts have not been sufficiently proven here. Ms. Archer testified the ratio between the gross receipts of Brian D. Bennett Construction and the cost of goods sold was consistent in most years, except 2006 and 2010. The record establishes that the income of BDB as a contractor is linked with the economy. The record is replete with the parties' financial difficulties. That BDB overstated his income on a credit application is evident, however, it does not change these conclusions or the actual tax records in evidence. FLB acknowledged that she signed the parties' joint tax returns without reading them and had no Information that any of the returns were erroneous. Similarly Ms. Archer testified she had no reason to doubt the information provided to her by BDB.  BDB was questioned about some of the deposits in the construction account and testified they were actually transfers of money from the joint account he has with his mother at CF Bank.  It was therefore correct to exclude these deposits as income to Brian D.

Bennett Construction.

**{¶30}** The trial court did not err in its calculation of child support, or in its decision to not award spousal support to either party. The income figures used for child support purposes were reasonable based upon the evidence presented at trial. The spousal support factors were carefully considered. What is readily apparent from the record is that neither party is in a workable financial position so that an award of spousal support would be reasonable. The trial court found that "the parties struggled when they lived together, and the struggle has only worsened now that they are trying to support two households," and that neither Brian nor Frieda has virtually any liquid assets or money saved. Thus, the spousal support decision was reasonable. As a result of the foregoing, Frieda's second assignment of error is also meritless.

## Conclusion

**{¶31}** Both of Frieda's assignments of error are meritless. Frieda failed to prove financial misconduct by Brian. The trial court's calculation of Brian's income was reasonable and supported by the evidence at trial. Thus, Frieda also cannot show that it was an abuse of discretion for the trial court to decline to award her spousal support or that the child support order was too low. Accordingly, both of Frieda's assignments of errors are meritless, and the judgment of the trial court is affirmed.

Donofrio, P. J., concurs

Robb, J., concurs