[Cite as *Sokolowski v Sokolowski*, 2017-Ohio-9216.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| JOSEPH ARTHUR SOKOLOWSKI, | ) | CASE NO. 16 JE 0028 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| TINA MARIE SOKOLOWSKI, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
Pleas of Jefferson County, Ohio
Case No. 16-DR-0007

JUDGMENT:      Affirmed.

APPEARANCES:

For Plaintiff-Appellee:      Atty. Mary F. Corabi
Corabi Law Office
424 Market Street
Steubenville, Ohio 43952

For Defendant-Appellant:      Atty. Marian D. Davidson
100 N. 4th Street
Floor 7, Suite 700
Steubenville, Ohio 43952

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated:  December 18, 2017

ROBB, P.J.

{¶1} Appellant Tina Marie Sokolowski appeals the decision of the Jefferson County Common Pleas Court. She contends the division of marital assets and debts was an abuse of discretion. She also claims the court abused its discretion in not finding Appellee Joseph Arthur Sokolowski engaged in financial misconduct when he cashed an IRA and expended the funds on debts and marital expenses. For the following reasons, the trial court's decision is affirmed.

STATEMENT OF THE CASE

{¶2} The parties were married in October 1984. The husband filed a complaint for divorce (without minor children) on March 23, 2015. After a hearing on temporary matters, the court issued temporary orders in a May 13, 2015 entry. The court granted both parties cross-motions to prohibit the other from selling, transferring, liquidating, or otherwise disposing of any assets during the pendency of the matter. At the same time, the husband received the temporary and exclusive use of the marital residence as requested and was ordered to be responsible for the two mortgages, utilities, real estate taxes, and home owner's insurance. The court also ordered him to be responsible for paying all monthly marital expenses during the pendency of the action. The husband was ordered to pay $576 per month in temporary spousal support with credit for making the monthly payment on the Honda CRV driven by the wife ($326) and the monthly automobile insurance ($150). In addition, he was ordered to pay for the wife's health insurance, uninsured medical expenses, and prescription expenses. The divorce trial was held on December 30, 2015. Besides the 2013 Honda CRV, the parties owned two 2009 Honda Civics; the husband drove one and the parties' adult son drove the other. The husband asked for one Civic and wished to sell the other. The parties acknowledged the household goods were previously divided equally and agreed to divide Appellant's Steelworkers' pension equally. They also agreed not to discharge via bankruptcy any of the debts at issue in the action. The parties stipulated to the value of all marital assets and liabilities, with the exception of whether the husband's father loaned them money.

{¶3} On this topic, the husband's father testified and presented a ledger he kept showing various loans granted to his children and any payments received from

them. He explained he loaned money to his children interest-free because he was not receiving interest from the bank and he wished to assist his children in avoiding interest on their loans. (Tr. 12-13, 19). His monthly income in retirement was $1,600, and he expected his children to pay him back. (Tr. 13, 19, 29, 31). The husband's father testified to loaning the parties $38,580 during the course of the marriage, for the following items and amounts: $8,000 for a red car when the wife's car was too old to drive; $6,000 for a van; $1,100 for a barn; $3,000 for a pool; $18,000 to pay off a house; and other smaller itemized amounts. (Tr. 16-17, 30-31). He pointed to payments he received from them, bringing the loan down to $19,085 before the recent payment of $10,000, which left the balance at $9,085. (Tr. 18).

**{¶4}** The husband, who was 55 years old, testified their financial condition was poor due to their spending. (Tr. 48, 54). As to a disputed IRA, the husband explained it was a roll-over account from a retirement settlement after the bankruptcy of a steel mill where he worked from 1979 to 1994, making five years of the time earned in the plan pre-marital. (Tr. 49-51). In order to pay bills, the parties withdrew approximately $10,000 (after tax and penalty) from the IRA in 2013. (Tr. 52-53). The husband stated this was after he and his wife went to an adviser's office intending to cash in the entire IRA, but the adviser talked them out of it. (Tr. 53). This testimony was not contradicted.

**{¶5}** The husband testified his wife moved into her father's house and quit her job in February 2015. Her physician had advised she would be off work for some months as she needed knee surgery. The husband expressed concern to his wife they would go bankrupt, and she responded that she did not want to go bankrupt. (Tr. 55-56). He testified, "We said 'Well, we'll cash in the IRA and we'll pay up the bills'." (Tr. 55). A March 10, 2015 check statement showed a full withdrawal of the IRA occurred on that date. The gross balance was $58,866.89; with taxes and fees subtracted, the net amount of the check sent to the husband was $42,996.28. The husband testified he stopped to visit the wife at her father's house to tell her about the check and she asked, "How much of a beating did we take?" and said, "Aww" when he told her the amount. (Tr. 57, 109).

**{¶6}** The husband opened an individual checking account. He said the joint checking account was a disaster due to various overdrafts (as evidenced on bank statements submitted by the wife as an exhibit); he believed the wife caused these issues. He transferred $3,641 from the joint checking account to his new checking account on March 2, 2015 and $1,325.98 on March 12, 2015. (It should be noted his paychecks were still being directly deposited into the joint account at this time, e.g., $1,261.99 on February 26 and $1,251.53 on March 12, 2015, plus a bonus check.)

**{¶7}** The parties' 2014 income tax refund of $7,020 ($6,915 federal plus $105 state) was deposited into the joint checking account on March 12, 2015 and transferred into the husband's individual account on March 13, 2015. The husband wrote a check to the wife for half of the amount of the tax refund (and then discovered they had to repay $742 due to their son's individual tax filing).

**{¶8}** On March 16, 2015, the husband deposited the IRA check into his individual checking account. He submitted a list of marital debts (totaling $35,819.43) toward which he applied the IRA proceeds: credit union loan (from when they bought a new air conditioner), $1,693.87; car loan on one Honda Civic, $7,808.59; car loan on the other Honda Civic, $8,274.97; Discover card, $2,500; Visa card, $1,800; Sam's Club credit card, $700; PNC card, $900 (a result of the automatic overdraft protection for the joint checking account); balance of hardwood flooring contract, $900; repaid tax for claiming their son on their taxes when he claimed himself, $742; payment on loan to father, $10,000; and payment for bowls they purchased from his brother, $500[1].

**{¶9}** The husband also testified he could not cover all of the marital expenses (and spousal support) with solely his income and used the remainder of the money to assist in paying regular monthly bills (including recurring monthly payments on marital debts) during the ten months between the filing of the complaint and the

---

[1] The husband's brother testified he crafted artisanal wooden bowls and urns from exotic woods. In the past few years, the parties would choose which pieces they wanted, and he would charge them for his costs (a discount from what the objects were worth). The $500 payment was said to be for objects they previously took but had not yet paid for. (Tr. 34-36, 38). At the end of the hearing when the court was asking the wife's attorney if certain arguments were moot due to the agreement on household goods, the husband said he did not wish to "squabble" about this payment or a $162.56 payment made in order to receive a gun back from being repaired. (Tr. 223-224).

divorce hearing. (Tr. 63). For instance, he said he paid: $6,820 for ten months of house payments on the two mortgages; $3,260 for ten months of car payments on the Honda CRV driven by the wife; $3,100 for ten months of car insurance on three vehicles; $900 for house insurance; $500 for prescriptions and co-payments; $830 for moving a fence due to a property line dispute; $1,600 for real estate taxes; $1,000 for dog food and vaccines; $600 for life insurance; and $800 for car repairs. For court-ordered spousal support, in addition to the wife's car payment and insurance, he paid $100 per month. He also said he gave the wife cash prior to the temporary order. He provided amounts he spent on utilities, pool care, and his own activities over the ten-month period since filing the divorce complaint.

{¶10} When asked why he did not use the IRA money to pay off the high-interest credit cards, he explained he was hesitant to put more money on the credit cards as he feared the wife would charge more and he believed the wife recently reactivated the Discover card. (Tr. 109-110). He also explained he was going to pay more on the credit cards after the temporary hearing where he sought to prohibit new joint debt, but his wife wanted to be paid for half the tax return (i.e., if she was not using her half to pay the debts, then he was not going to use his half to pay the debts). (Tr. 110).

{¶11} The wife, who was 54 years old, testified she had two associate's degrees. She also took a course to become a certified nursing assistant and worked in that field for 14 years. Most recently, she worked two days a week, netting $1,000 per month. (Tr. 54). She stopped working as a result of her need to have knee surgery; her surgery was on March 18, 2015. (Tr. 156). She applied for disability prior to surgery. (Tr. 156). She thereafter began receiving $896 per month in Social Security Disability benefits. (Tr. 163). She needed surgery on her other knee but was waiting until she finished her bachelor's degree in social work. She anticipated being graduated after three more semesters. She received free tuition, books, and gas money after applying for assistance from the Belmont County Department of Jobs and Family Services. (Tr. 158-159). She lived with her father so he would not be placed in a nursing home. (Tr. 159). She consented to the husband refinancing

the mortgages and keeping the marital residence. She asked for half of the equity in the house, which they agreed was $46,500.

{¶12} Contrary to the husband's testimony, the wife testified she was unaware the husband cashed the IRA when he did. She said he came to see her six days after her surgery and told her he cashed the IRA. She also said she thought he was going to use the money to pay off the credit cards. (Tr. 173). She said, "I did not agree to cashing out all that money. There was going to be too much of a penalty for that and there would be other ways to try to make the bills of the expenses." (Tr. 174). She asked the court to attribute the gross amount of the IRA on the day the husband cashed it as marital property that he already received. (Tr. 174; Def. Ex. H). She then stated she had no issue with the money he paid on the two Honda Civics. (Tr. 185-186). She also opined he should have paid off the high-interest credit cards. (Tr. 182). She complained about various expenses itemized by the husband. It appears she did not realize these were not monthly figures (but were amounts paid during the pendency of the divorce); nor did she realize the amounts were not all paid with the IRA proceeds (rather, the husband was showing all expenditures pending the divorce from all sources, including his paychecks).

{¶13} The wife asked the court to give the parties' son the 2009 Honda Civic he had been driving. (Tr. 174). The car loan was paid off due to the large principal payment the husband made with the IRA proceeds. The husband said the son was given the privilege to drive their car. He asked to be awarded one of the Civics and believed they should sell the other (or she could provide him with half of the $7,000 value). (Tr. 74-76). The adult parties' son testified he drove the car with the impression that it had been his sixteenth birthday present, although it was not titled in his name. (Tr. 148). The son recently bought a replacement vehicle but said he would sell it to avoid making car payments if he could keep the Honda Civic.

{¶14} As to the money provided to the parties by the husband's father, the wife said she never asked him for a loan and assumed any money from family was a gift. (Tr. 182, 208). Regarding the $18,000 received from the husband's father to pay off a house loan, she testified she thought they paid off the loan themselves. (Tr. 209).

{¶15} On October 5, 2016, the court issued its decision granting the parties a divorce. The parties were to equally divide the husband's pension as agreed. They were also ordered to equally divide the $28,000 401(k) from the husband's employment and a $2,900 IRA from the wife's employment. The husband was permitted to keep and refinance the house (to pay off the parties' two mortgages). The residence had an agreed value of $122,500 and an agreed equity of $46,500. The court ordered the husband to provide the wife with $12,250 from the equity (or from elsewhere) within six months of the order. The court ordered the husband to pay the remaining credit card debt (which totaled $23,000).

{¶16} The court found the wife was aware of the IRA transaction, finding the husband's testimony credible. The court concluded the husband used $35,819 of the net IRA proceeds to pay outstanding marital debts and the remainder of the IRA proceeds was used to pay marital debts, monthly payments associated with the marital debts, and monthly marital expenses not covered by his salary. The court noted the parties lived beyond their means even when the wife was working. The court found the amounts in the ledger maintained by the husband's father represented loans to the parties accumulated during the marriage which benefited both parties. The court found the wife's claim (that she did not know the various amounts they received were loans) was not credible. Although noting it may be "less than prudent" to pay a large amount on the interest-free loan owed to the husband's father, the court concluded the husband did not engage in financial misconduct. The court ordered the parties to split the $9,085 debt owed to the husband's father.

{¶17} The court awarded the wife the 2013 Honda CRV (said to be worth $17,105) and made her responsible for the debt on the vehicle ($13,000). The two Honda Civics were said to be worth $7,000 each. (Tr. 8, 10; Pl.Ex. 7). The husband received the one with no remaining car loan. The wife received the other Civic. At the time of the hearing, the remaining loan on this vehicle was $1,000. (Tr. 71-72, 108, 123). As for spousal support, the husband was ordered to pay $500 per month

for five years, beginning October 1, 2016, and the court retained jurisdiction.[2]  The wife filed a timely notice of appeal.

ASSIGNMENT OF ERROR ONE:  DIVISION OF MARITAL PROPERTY

{¶18}  The wife sets forth two assignments of error, the first of which provides:

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO EQUITABLY DIVIDE MARITAL ASSETS AND DEBTS."

{¶19}  The wife states the court failed to consider the factors in R.C. 3105.171(F) and claims the decision as to the equity in the marital residence and the allocation of two debt items was against the manifest weight of the evidence.  First, the wife argues the court failed to explain why it ordered the husband to pay her an amount that was less than half of the equity in the marital residence.  Specifically, the court ordered the husband to pay the wife $12,250 from the refinancing of the marital residence, when the equity was agreed to be $46,500.  She had asked for half of the equity ($23,250).  Second, the wife argues it was not equitable to assign her all of the $13,000 debt remaining on her 2013 Honda CRV and half of the $9,085 debt owed to the husband's father (assuming the money was a loan).  She states the court failed to consider that the husband was in a better position to pay these debts.

{¶20}  The husband responds by pointing out the marital property division was not equal but the division was in the wife's favor.  He provides a chart with the assets and liabilities assigned to each party to show he received $4,105 less than the wife; noting she would owe him $2,052.50 if the division were to be equal.  She has not contested this chart.

{¶21}  A trial court has broad discretion in the allocation of marital assets, and its judgment will not be disturbed absent an abuse of discretion.  *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, ¶ 5.  A reviewing court will not substitute its judgment for that of the trial court as to the division of marital property

---

[2] On November 3, 2016, the husband filed a motion to modify spousal support based on events occurring since the December 2015 hearing such as his income reduction and qualification for Social Security Disability and the resulting equal pension payments to both parties.  In a December 12, 2016 entry, the court stated the parties reached an agreement and modified the amount of spousal support to $300, effective November 1, 2016.  The husband's motion also asked for clarification of the court's October 5, 2016 divorce decree, noting the distribution was not exactly equal as he received less than the wife (and stating the wife would receive $2,052.50 less if the division was equal).  He withdrew this motion prior to the December 12, 2016 entry.

unless the decision was unreasonable, arbitrary, or unconscionable. *Bisker v. Bisker*, 69 Ohio St.3d 608, 635 N.E.2d 308 (1994), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). "Except as provided in this division or division (E) of this section,[3] the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1). An equal division is the starting point. *Neville*, 99 Ohio St.3d 275 at ¶ 5.

{¶22} In making a division of marital property, the court shall consider the following factors: (1) the duration of the marriage; (2) the assets and liabilities; (3) the desirability of awarding the family home, or the right to reside in it, to the spouse with custody of the marital children; (4) the liquidity of the property to be distributed; (5) the economic desirability of retaining intact an asset or an interest in an asset; (6) the tax consequences of the property division upon the respective awards to be made to each spouse; (7) the costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;(8) any division in a voluntarily entered separation agreement; (9) any retirement benefits of the spouses, excluding Social Security except as may be relevant to divide a public pension; and (10) any other factor the court expressly finds relevant and equitable. R.C. 3105.171(F). "[T]he court shall make written findings of fact that support the determination that the marital property has been equitably divided" and shall specify the dates used to define "during the marriage." R.C. 3105.171(G).

{¶23} Here, the trial court's entry provides the date of marriage, October 6, 1984, and the end date for considering what constitutes marital property, the hearing date of December 30, 2015. *See* R.C. 3105.171(G). This evinces a consideration of the duration of the marriage. *See* R.C. 3105.171(F)(1). There were no minor children to consider in allowing the husband to refinance the house. *See* R.C. 3105.171(F)(3). The decision permitting him to refinance to pay the wife from the equity entails a consideration of the desirability of maintaining an asset intact, and in

---

[3] Division (E) deals with a distributive award, which is defined in division (A).

any event, the wife agreed to him refinancing the house to pay her share of the equity. *See* R.C. 3105.171(F)(5). Sale costs would be avoided by his refinancing. See R.C. 3105.171(F)(7). The liquidity of various assets can be gleaned from their descriptions. *See* R.C. 3105.171(F)(4). The court set forth the parties' agreement as to the division of household property, which the parties confirmed was equal and equitable. *See* R.C. 3105.171(F)(2),(8).

{¶24} The court set forth the value of the marital residence, the debt thereon, and the equity therein. *See* R.C. 3105.171(F)(2). The court specified the value of a $2,900 IRA, which the court then divided equally. *See* R.C. 3105.171(F)(2),(9). The tax consequences of this transaction were not expressly discussed, but the wife's brief does not discuss this factor or explain how this would affect the division. *See* R.C. 3105.171(F)(6). And, as it was divided equally, the tax consequences would be shared. The court memorialized the agreement to equally divide the husband's pension and the 401K. *See* R.C. 3105.171(F)(8),(9). *See also* Pl.Ex. 7; Def. Ex.H. The court ordered the husband to pay the credit card debt and listed the three remaining credit card accounts. Although the court did not set forth the amount of each debt, the court stated the total marital debt was $122,085 (as set forth in Pl.Ex. 7). Even more importantly, the court pointed out the parties stipulated to the values of all assets and liabilities, except a debt to the husband's father, which the court found to be $9,085. *See* R.C. 3105.171(F)(2), (8). (Tr. 8, 10, 70-72; Pl. Ex. 7).

{¶25} Contrary to the wife's suggestion, the trial court did not fail to make written findings of fact to support its determination that the marital property was equitably divided. R.C. 3105.171(G). A court must indicate the basis for its division of marital property in sufficient detail to enable a reviewing court to determine whether the award is fair and equitable but "need not explain in minute detail its reasoning." *Cope v. Guehl*, 7th Dist. No. 07 CO 35, 2009-Ohio-2891, 2009 WL 1710753, ¶ 38. Although a chart with values and allocations is a helpful feature of a divorce decree, there was an agreement on values and assets in this case and a reviewable end result can be calculated from the court's division.

{¶26} As to her argument about the amount she would receive upon the husband's refinancing of the house, this argument appears to be based upon mere

semantics. The court ordered the husband to pay an amount from the equity in the house in order to come closer to equalizing the property division. Had the court ordered him to pay her half of the equity as a payment for her share of the remaining marital assets, the property division would have been even more in her favor. This does not mean the court failed to attribute half of the equity in the residence to her as property division. For instance, the court ordered the husband to pay $23,000 in credit card debt, and she was not ordered to be responsible for any of said debt. She also received an extra vehicle worth more than the remaining loan on it. The husband's brief explains how the division of property effectuated by the court's order and the parties' agreement on values shows she received $4,105 more than he did. The wife does not reply otherwise.

{¶27} "When reviewing a trial court's property division, this court must consider the distribution in its entirety under the totality of the circumstances." *Sanor v. Sanor*, 7th Dist. No. 2001 CO 37, 2002-Ohio-5248, ¶ 35. The wife's overly narrow argument as to the payment she will receive from the equity in the residence upon the husband's refinancing does not take into consideration the entirety of the distribution. The trial court's decision as to the equity dealt with the equalization payment and its source. The wife is contesting this item "out of context of the entire award." *Briganti v. Briganti*, 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984). The permissible review is whether the trial court's disposition of individual items resulted in a property division which was an abuse of discretion *when viewed in its entirety. Id.* Accordingly, "a reviewing court should not review discrete aspects of the property division out of the context of the entire award, but should consider the distribution within the context of the entire award." *Hawkins v. Hawkins*, 2d Dist. No. 2016-CA-26, 2017-Ohio-4201, ¶ 24.

{¶28} The wife also complains about the allocation of two debts. Contrary to one of her arguments, the trial court's decision was not arbitrary or capricious: one marital debt was divided equally and she was assigned the debt which accompanied the vehicle she desired. As to whether the decision was unreasonable, the wife believes assigning this debt to her is unfair considering the long-term marriage wherein the husband was the primary source of income while she is unable to work

and receives only $896 per month on disability. She testified: she lives with her father; she decided to go back to college with plans to obtain a job as a social worker; she received free tuition, books, and gas money; and she is waiting for her other knee surgery until after her college graduation (in three semesters time).

**{¶29}** Regarding the order for the parties to equally divide the $9,085 debt owed to the husband's father, the wife argued at trial there was no debt to the husband's father as all money received over the years constituted gifts. The court found the funds the husband's father provided to the parties constituted loans as alleged by husband. The money was used for marital items, including a car for the wife, a van, a pool, a barn, and an $18,000 home loan payoff. When asked by the court, the wife acknowledged she took care of writing checks for the bills. (Tr. 216-217). As the court suggested, both parties were aware they were living above their means. The husband's father kept a ledger, which pertained to all four of his children. It showed amounts loaned to these parties and payments made by these parties. The existence of the marital debt to the husband's father was a credibility determination within the province of the trial court. *See, e.g., Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21 ("If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment"), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984), fn. 3.

**{¶30}** In fact, the wife does not specifically contest the credibility of the husband's father on appeal. Rather, she contests the decision to allocate half of this debt to her, reasoning she does not have the financial ability to pay this debt along with her vehicle loan. After determining there was an outstanding marital loan, the court's subsequent decision to allocate half of the debt to each party complied with the statutory starting point. The trial court exercised its discretion finding it was equitable to provide an equal division of that loan balance. Indeed, the wife's proposed allocation of marital property asked for an overall equal division of marital property and marital debts (except for the IRA, which she argued was financial

misconduct as set forth in the next assignment of error). In any event, the property division is to be viewed in its entirety. *Briganti*, 9 Ohio St.3d at 222.

**{¶31}** As to the order for the wife to be responsible for the $13,000 car loan on the 2013 Honda CRV, she drove the CRV during the marriage and wished to keep the CRV after the divorce. The court awarded her the CRV and the accompanying debt. She also received a 2009 Honda Civic.[4] She need not keep both vehicles, i.e., she can sell one. Whether she can afford the car payments on her CRV after her monthly spousal support and disability income is her decision to make. In addition, she allocated the car loan to herself in her proposed marital property division. This was a marital debt secured by the vehicle for which the loan was taken. The decision to allocate this debt to the person seeking the vehicle encumbered by that debt would not appear to be an abuse of discretion. And once again, the property division is to be viewed in its entirety. *Briganti*, 9 Ohio St.3d at 222.

**{¶32}** In sum, assigning the wife responsibility for half of the marital debt owed to the husband's father and the debt on her own vehicle figured into the overall property division discussed above. The order for the husband to pay the wife a certain amount from the equity in the house was the method to come closer to equalizing the property division, and any overall lack of equality leaned in favor of the wife. We refuse to substitute our judgment for that of the trial court on the division of marital property in this case. Accordingly, this assignment of error is overruled.

ASSIGNMENT OF ERROR TWO: ALLEGATION OF FINANCIAL MISCONDUCT

**{¶33}** The wife's second assignment of error contends:

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO FIND THAT THE APPELLEE COMMITTED FINANCIAL MISCONDUCT."

**{¶34}** The wife alleges the manifest weight of the evidence clearly demonstrated the husband "siphoned" marital assets days before filing the complaint for divorce. She notes the taxes and penalty due upon the cashing of the IRA, which

---

[4] The Honda Civic was said to be worth $7,000. At the time of the divorce hearing, the loan balance on this vehicle was $1,000. Notably however, the husband was obligated to make the monthly payments on this vehicle as a marital expense under the temporary order, which would have continued after the December 30, 2015 divorce hearing through the October 6, 2016 decree, presumably decreasing the loan balance on that vehicle.

had a gross amount of $59,866.89 and paid out only $42,996.28. She complains of the "devastating" tax consequences. Although the 10% penalty for withdrawal before age 59.5 was unfortunate, it should be noted the payment of regular taxes on the distribution would occur regardless of when they withdrew the money. On the topic of the penalty for early withdrawal, the parties went to an adviser with plans to cash the IRA in the past and ended up withdrawing $10,000; they paid the 10% penalty at that time as well. In addition, there was no evidence whether any fees (charged by the adviser or the fund) would have been avoided if the fund was divided by the court at the time of the divorce hearing.

{¶35} The wife points out how the husband deposited the IRA proceeds into his newly created individual checking account. As set forth in the statement of the case supra, the husband explained the various marital debts (totaling over $35,000) he paid from the proceeds of the IRA. He also testified the wife participated in the decision to cash in the IRA due to her need for surgery, inability to work at the time, and their debt. *The trial court found his testimony credible and disbelieved the wife's claim she learned of the IRA cashing after it was completed.* The wife urges the husband's testimony lacked credibility because, for instance, he claimed he did not use IRA proceeds to pay his attorney $5,200 in fees. However, his testimony on this payment does not warrant a finding his entire testimony lacked credibility. In fact, the itemization he provided to the wife in discovery and presented by her as an exhibit shows this payment on a list of his *total* expenditures from *both* the IRA and *his paychecks*. Contrary to her suggestion at trial, the list does not admit he spent IRA funds on attorney's fees.

{¶36} The wife did not appear to contest that the husband paid various marital debts with the proceeds. Although these payments reduced the total marital assets, *they also reduced the total marital debt.* The wife notes the temporary order prohibited the parties from disposing of assets during the pendency of the divorce proceedings. Many of the payments from the proceeds were made before the temporary order. His transfer of $3,641 from the joint account to his new account was before the temporary order and could be seen as representing his recent paychecks which were still being deposited into the joint account. He explained his

concerns as to multiple overdrafts on the joint account. His transfer of $7,020 from the joint account to his individual account involved the parties' tax refund. She received half of this amount prior to the temporary order, as she requested; he explained he had envisioned them jointly paying down their credit card debt with the tax refund.

**{¶37}** The husband made some recurring monthly debt payments from the IRA proceeds[5] after the temporary order, but the same temporary order made him responsible for all marital expenses. Various expenses she protested as not being marital could be reasonably construed as being covered by his paychecks which were deposited into the same account. She complained other monthly expenses the husband listed seemed too high. Yet, he did not indicate these were monthly expenses; rather, they were amounts he spent in the ten months between the filing of the complaint and the hearing.

**{¶38}** Pursuant to R.C. 3105.171(E)(4), "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." The spouse alleging the application of this division bears the burden of proving allegations of financial misconduct. *Bennett v. Bennett*, 7th Dist. No. 14 CO 8, 2016-Ohio-462, ¶ 13; *Ballas v. Ballas*, 7th Dist. No. 04 MA 60, 2004-Ohio-5128, ¶ 50. There must be some wrongful intent or scienter on the part of the party being accused. *Bennett*, 7th Dist. No. 14 CO 8 at ¶ 13, citing *Ballas*, 7th Dist. No. 04 MA 60 at ¶ 48-53. "Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." *Bennett*, 7th Dist. No. 14 CO 8 at ¶ 13, quoting *Gentile v. Gentile*, 8th Dist. No. 97971, 2013-Ohio-1338, ¶ 55.

---

[5] Although the trial court did not specify any of the IRA was separate property, the trial court found the husband did not engage in financial misconduct by cashing and using *all* of the funds in the account to pay marital debts and expenses (thereby making it irrelevant how much was separate property). It should be noted there is no dispute that the entire account was funded by one employer and 5 years of the 15 years the husband worked for that employer occurred prior to marriage.

**{¶39}** In *Bennett*, we noted even if a financial move could be considered detrimental, it is relevant to analyze whether the move was detrimental to both parties equally. *Bennett*, 7th Dist. No. 14 CO 8 at ¶ 15 (finding transaction regarding a lease was not financial misconduct). Regarding the husband's withdrawal of funds from certain accounts, the trial court again found no financial misconduct; this court affirmed, observing the wife ultimately benefited regardless of whether she was aware of the withdrawals. *Id.* at ¶ 16.

**{¶40}** In *Hadinger*, the Tenth District upheld a trial court's determination that there was no financial misconduct where a spouse cashed in a retirement account without her spouse's knowledge, incurred the early withdrawal penalty, and then paid marital expenses and debts, including $9,000 to her mother. *Hadinger v. Hadinger*, 10th Dist. No. 15AP-09, 2016-Ohio-821, ¶ 23, 29-31. As occurred in the case at bar, the *Hadinger* court noted the parties previously took an early withdrawal from a marital retirement account. *See id.* at ¶ 30.

**{¶41}** The wife relies on this court's *Jeskey* case, where this court affirmed the trial court's decision to charge $22,000 a spouse used from a joint savings account toward her share of marital assets; the money was derived from the other spouse's personal injury settlement, which was originally non-marital property. *Jeskey v. Jeskey*, 7th Dist. No. 14 JE 23, 2015-Ohio-5599. The wife emphasizes how our *Jeskey* case stated the timing of the transactions can provide evidence of financial misconduct. *See id.* at ¶ 14. Nevertheless, the fact a reviewing court affirms a trial court's decision upon an abuse of discretion review does not mean the same reviewing court would reverse the opposite trial court decision. "An appellate court will not disturb a trial court's rulings regarding financial misconduct, in the context of the division of marital property, absent an abuse of discretion." *Id.* at ¶ 13. "In reviewing for abuse of discretion, results can often vary in different cases, as there can be more than one reasonable decision from which the trial court could choose." *Yancey v. Yancey*, 7th Dist. No. 07 MA 33, 2007-Ohio-5045, ¶ 25. As we pointed out in *Jeskey*, the trial court was free to believe or disbelieve a party's claim as to how the money was spent. *Jeskey*, 7th Dist. No. 14 JE 23 at ¶ 16. In addition,

the *Jeskey* case involved testimony the parties agreed not to touch the account. *Id.* at ¶ 15-16.

**{¶42}** Here, there was testimony the parties previously took an early withdrawal from the IRA and the husband cashed the IRA due to various occurrences, including the wife's plan for surgery, the wife quitting her job, and the parties decision to rectify their past behavior of living beyond their means without resorting to bankruptcy. In point of fact, a term of the parties' agreement was to refrain from discharging any marital debt in bankruptcy. The husband testified the wife participated in the decision to cash the IRA. The trial court was free to believe or disbelieve the parties' testimony and find the transactions benefitted both parties by decreasing the marital debt. *See, generally*, *Eastley*, 132 Ohio St.3d 328 at 21, quoting *Seasons Coal Co.*, 10 Ohio St.3d at fn. 3 (every reasonable presumption must be made in favor of the factual judgment). It would appear the trial court was not required to find the husband profited over the wife with wrongful intent or intentionally defeated her distribution of a portion of the marital estate (which would have been decreased by any marital debts that were not paid). The trial court did not abuse its discretion in concluding the husband did not engage in financial misconduct or violate the court's temporary order. This assignment of error is overruled.

**{¶43}** For the foregoing reasons, the trial court's judgment is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.