[Cite as *Liles v. Liles*, 2023-Ohio-1030.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

JANEL R. LILES,

Petitioner-Appellant,

v.

JACQWAN D. LILES,

Petitioner-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0065**

---

Domestic Relations Appeal from the
Court of Common Pleas Division of Domestic Relations
of Mahoning County, Ohio
Case No. 16 DR 72

**BEFORE:**
Carol Ann Robb, David A. D'Apolito, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Mark Lavelle*, 940 Windham Court, Suite #7, Boardman, Ohio 44512 for Petitioner-Appellant and

*Atty. Jennifer Robbins*, 7081 West Boulevard, Youngstown, Ohio 44512 for Petitioner-Appellee.

Dated:  March 29, 2023

**Robb, J.**

{¶1}   Appellant, Janel R. Liles, appeals the trial court's May 31, 2022 judgment overruling her objections to the magistrate's March 2, 2022 decision.  She argues there was no change in circumstances warranting the trial court's decision reallocating parental rights.  We affirm.

<u>Statement of the Case</u>

{¶2}   Appellant (mother) and Appellee (father), Jacqwan D. Liles, were married in 2011 and had two children, born in 2013 and 2015.  In February of 2016, the parties petitioned for a dissolution of their marriage.  The dissolution was granted in March of 2016.  The parties' separation agreement was adopted by the court and is attached to the final decree.  The final decree states:  "the parties agree that the Wife shall be deemed the sole residential parent."  (March 22, 2016 Final Decree of Dissolution.)

{¶3}   The Separation Agreement does not prohibit either party's relocation; it includes a notice requirement.  It states in Article IV, titled Relocation:

>   In the event that either Parent decides to relocate within or outside the Boardman, Ohio School District, said parent shall, at least sixty (60) days prior to the planned move, give written notice to the Court of the intention to relocate by filing a Notice of Intent to relocate form issued by the Court.  * * * The Court will not normally schedule a hearing on the Notice unless the other parent requests the same in writing.  The purpose of any such scheduled hearing shall be to determine whether it is in the best interest of the child/children to revise the companionship schedule.  If after sixty (60) days, no objection has been raised by the other parent, the Court may enter an entry modifying the visitation as requested by the Relocating Parent.

{¶4}   The next filing in the case is Appellee's May 5, 2021 motion, which seeks an order designating him the residential parent; preventing mother's relocation to Texas; defining out of state vacation time; and seeking tax dependency exemptions.  (May 5, 2021 Motion.)  The motion was set for hearing in July of 2021.

{¶5}   A status hearing was held June 2, 2021 before a magistrate, resulting in an agreed temporary order.  Per the order, the parties agreed in part that Appellant was

permitted to take the children to Colorado for one month during summer vacation. (June 15, 2021 Agreed Temporary Order.)

{¶6} Thereafter, Appellant filed her notice of intent to relocate to San Antonio, Texas and her opposition to father's May 5, 2021 motion. Appellee then filed an Expedited Motion for Physical Possession and for the Children to Reside with Father. For cause, Appellee alleged mother and the children were living in a motel. (June 21, 2021 Expedited Motion.)

{¶7} Following a July 2021 pretrial, the magistrate issued an order setting forth the parents' agreement about Appellee's parenting time and access to the children via telephone. (July 21, 2021 Magistrate's Order.)

{¶8} Following the expedited July 2021 hearing, the magistrate issued another order indicating the parties had reached a temporary agreement pending the full hearing on the merits, to be held October 13, 2021. The court overruled Appellee's motion for emergency custody. (August 27, 2021 Magistrate's Order.)

{¶9} The court appointed a guardian ad litem (GAL) and continued the hearing until January of 2022. In light of the continuance, Appellee moved for interim companionship with the children pending resolution of the case. (November 8, 2021, Motion.)

{¶10} The GAL submitted her confidential report and recommended Appellee's motion to be residential parent be denied, but that his motion preventing mother from relocating to Texas with the children be granted. The GAL recommended Appellant return to Ohio; reside in Ohio with the children; and remain the custodial parent. (GAL Report, Court's Exhibit A.)

{¶11} The GAL reported that both parents obtained degrees from Youngstown State University, where they met. She also noted Appellant has not been employed for about six years. Appellant was a full-time mother who also helped with her special needs adult brother. One of the parties' children is autistic. Regarding Appellee, the GAL noted he previously had a significant amount of travel for work, and as a result, he had no overnight visits with the children from 2015 through 2018. However, Appellee recently took a remote job to be home more for the children. (GAL Report, Court's Exhibit A.)

{¶12} According to the GAL's report, Appellant contended she had always planned to relocate after her father, the children's maternal grandfather, retired. Appellant

informed the GAL that Appellee was well aware of her continuing intention to relocate out of state when her parents moved. Appellant's father had been in the military while she was growing up, and she was accustomed to relocating. Appellant relied on her parents for financial support. She and the children lived with them since the parties' dissolution. Appellant was homeschooling the children when the proceedings were initiated because of the pandemic. The children previously attended in-person school, preschool, and participated in various extracurricular activities. (GAL Report, Court's Exhibit A.)

{¶13} Alexandra Garant, Appellee's fiancé was the first witness at the January 19, 2022 video hearing. At the time of her testimony, Garant and Appellee were engaged to be married and had a baby together, who was 26 days old at the time. Garant lived in Canada but planned to relocate to the Youngstown area to marry and live with Appellee as soon as possible. Garant said both of the parties are good parents. (January 19, 2022 Tr. 11.)

{¶14} Appellee's second witness, a friend of his, testified Appellee is very involved in his children's lives. He also testified that both parties are good parents. (January 19, 2022 Tr. 21-25.)

{¶15} Appellee testified he and Appellant met at Youngstown State University while attending college. He is not from the area, but played basketball during college. Appellee intends to stay in the area, and he and Garant were planning to be married in November of 2022. Appellee's mother, who lives out of state, planned to move to the area as well. He planned to buy a larger house here. (January 19, 2022 Tr. 27-31.)

{¶16} Appellee recently accepted a remote job in order to help care for the children. He said he also has friends in the area who can help. Immediately before the children's out of state relocation, Appellee kept the children almost every weekend overnight. He said he had them every weekend and once or twice during the week during the years 2020 and 2021. He did not have a court order regarding his parenting time because he would get time with the kids whenever he was in town and available. Appellee testified he wants to be more involved with the children, and although Appellant informs him about most matters concerning the children, sometimes she does not do so until after something occurs and does "not include him in the process." (January 19, 2022 Tr. 33-36, 38-41.)

**{¶17}** Appellee denied knowing mother planned to relocate. Instead, he said he knew Appellant's parents were planning to relocate to a warmer climate, but not her. (January 19, 2022 Tr. 42-43.) Appellee also testified that although Appellant told him her parents had sold their home in April of 2021, she only told him approximately 30 days before she left with the children to stay in Colorado that she was moving out of state. She moved to Colorado for a month with the children to visit and stay with family while her parents' new home was being built in the San Antonio, Texas area. (January 19, 2022 Tr. 43-48.) Appellant left Ohio in June of 2021. (January 19, 2022 Tr. 44.) Appellee suggested the children stay with him during the interim while their mother lived in Colorado for the month, but she refused. He said the long-distance schedule would only give him 35 days of visitation a year. He does not feel valued as a parent. If the children remain in Texas, he said they would not have access to him or their newborn sister, and it would reduce the bond between them. He also explained that although Appellant's parents and brother were relocating, she has extended family in the Youngstown area. (January 19, 2022 Tr. 48-51.)

**{¶18}** Appellee felt the long distance parenting schedule does not give him enough parenting time to be involved with the children's daily lives, and it was unfair. He said Appellant's new residence is a 22-hour drive each way, which would be about a three-day trip each way. Appellee also testified there are no direct flights to the San Antonio area and flights there are expensive. He flew there once since the children moved, and the one-way flight cost about $1,500. (January 19, 2022 Tr. 49-52.)

**{¶19}** Appellee also said although the parties are not completely aligned regarding their autistic son, Appellant is overall a good mother. He said the long distance move is bad because it denies him access to the children, which will hurt the kids by denying them a close relationship with their father. But on cross-examination, Appellee said he has no reason to believe their move to Texas has negatively affected them. At the time of the hearing, the children had just started in person school in Texas. One child was in first grade and the other was in second grade. (January 19, 2022 Tr. 57-74.)

**{¶20}** Appellant also testified. She said the children were three years and four months old at the time of the parties' dissolution in 2016. Their son attended in person kindergarten in Ohio before she started homeschooling both children due to COVID-19. (January 19, 2022 Tr. 78.)

**{¶21}** Appellant was raised by a military family who moved frequently during her childhood. Appellant explained her parents always made it known they intended to retire somewhere with a warm climate. They decided on the San Antonio area because of tax reasons and based on the proximity to an Air Force base at which they can use the amenities and shop at the commissary. (January 19, 2022 Tr. 81-83, 94.)

**{¶22}** When asked about the impact of the move on the children, Appellant agreed they were anxious about the move mostly because of the delay caused by the construction of the new home, but they were excited to get their own rooms instead of having to share. The kids are adjusting and have been attending in person school for less than one week. (January 19, 2022 Tr. 85.)

**{¶23}** Appellant explained that although the children were going to be in a new town and a new home, they will still be living with the same people, i.e., her, Appellant's adult brother, and her parents. She said the children's relationship with her parents is significant. (January 19, 2022 Tr. 119.)

**{¶24}** The parties' son has a 504 education plan, which provides him certain accommodations in the school setting. He is on the higher end of the autistic scale, and Appellant believes he will be a fully independent adult. (January 19, 2022 Tr. 98, 107.)

**{¶25}** Appellant also testified she likes Appellee's fiancé. According to Appellant, Appellee had been considering moving to Toronto to live with her. Appellant told Appellee the day after her parents' house sold that she was moving to Texas with the children. She said he "always knew" she planned to follow her parents when they relocated out of state. Appellant explained how her parents' house sold the day they met with the real estate agent. And because the housing market was "so crazy" at the time, they had to make a "detour" to stay with and visit family in Colorado. (January 19, 2022 Tr. 94-96.)

**{¶26}** On cross-examination, Appellant acknowledged she is not employed and is not on the deed to her parents' home. She has a master's degree and plans to eventually become independent from her parents. (January 19, 2022 Tr. 112-116.) Aside from the difficulty with father's visitation, Appellant denies other negative impacts on the children associated with their relocation to Texas. (January 19, 2022 Tr. 125-130.)

**{¶27}** Appellant's father, Jon Finch, testified on her behalf. Finch is a retired master sergeant from the United States Air Force. He explained how his house in Mahoning County sold in one day. He said the only issue with their move was having to

temporarily stay with his brother-in-law in Colorado while their new home was built. Finch did not believe the parties' children were upset by their relocation to Texas other than some anxiety associated with starting at a new school. (January 19, 2022 Tr. 142-152.)

**{¶28}** Finch denied wanting or trying to replace Appellee as a father, and instead, he emphasized his role was grandfather. Appellant and the parties' children have lived with him since the dissolution. He helps with the kids and sometimes will drive them to school. (January 19, 2022 Tr. 142-152.)

**{¶29}** The GAL testified that her recommendation was to maintain Appellant as the residential parent but to prohibit her from relocating with the children. The GAL explained her opinion, stating if father were to get custody, then she believes mother will return to the area, and then mother should regain custody of the children. Other than the distance to the father and less frequent parenting time with him, the GAL did not identify any negative impacts on the children based on their relocation. (January 19, 2022 Tr. 160-167.) The GAL suggested the court should grant father's motion preventing mother from relocating to Texas with the children. (January 19, 2022 Tr. 168-173.) Contrary to the magistrate's decision, the GAL did not recommend Appellee be granted custody.

**{¶30}** The GAL said her opinion at the time of the hearing was consistent with her report. She said both parents are highly intelligent, and the mother has her MBA. The GAL surmised if mother's relocation had to be without the children, then the GAL did not believe mother would relocate. The GAL testified, "So if she was gonna be here with the children, I wanted her to have [sic] residential parent, she was always the residential parent." (January 19, 2022 Tr. 164.) No one asked mother whether she would stay in the area if she lost custody of the children.

**{¶31}** In conclusion, Appellee's counsel argued that Appellant's relocation would drastically reduce his parenting time, which will negatively affect the children. He also claimed mother's quick decision to relocate such a great distance reflects bad decision making which is not in the children's best interests. The biggest problem was the distance of the move, approximately 1,500 miles, which include the time and cost to see the children. In opposition, Appellant's counsel claimed Appellee's parenting time will be essentially the same under the long distance visitation plan as it has been the majority of the children's lives. (January 19, 2022 Tr. 124-125.)

**{¶32}** Following the hearing, both parties filed legal memoranda in support of their respective positions about Appellant's proposed relocation with the children and Appellee's motion seeking custody or alternatively to prevent their relocation. The court issued its March 2, 2022 Judgment and granted Appellee's motion to be designated residential parent and legal custodian of the children and granted his motion to claim both children as dependents for tax purposes. The court ordered mother to obtain visitation pursuant to the court's long-distance parenting time schedule. (March 2, 2022 Judgment.)

**{¶33}** Appellant filed objections to the magistrate's decision and moved the court to stay the court's order. The court overruled her motion to stay and directed the parties to brief their arguments. The trial court subsequently overruled Appellant's objections and agreed with the magistrate and designated Appellee the residential parent and legal custodian of the children. (May 31, 2022 Judgment.)

**{¶34}** Appellant raises one assigned error on appeal.

<u>Assignment of Error</u>

**{¶35}** Appellant's assignment of error asserts:

"The trial court abused its discretion finding a change in circumstances, awarding Appellee custody of the minor children."

**{¶36}** Appellant contends the conclusion that a change in circumstances occurred here warranting a change in custody cannot stand based on this court's precedence and particularly our decision in *Williamson v. Williamson*, 7th Dist. No. 16 JE 0022, 2017-Ohio-1082, 87 N.E.3d 676. Appellant claims this court held in *Williamson* that a residential parent's act of relocating out of state is not a change in circumstances to warrant modifying custody when the relocation is based on the custodial parent's employment. She claims based on our prior holding, the trial court's decision here is punitive and illogical since Appellant's relocation to Texas in this case was based on her financial reliance on her parents. She claims the decision punishes her for her financial reliance on her parents whereas the parent in *Williamson* was allowed to remain the custodial parent and relocate out of state because her move was related to her employment.

**{¶37}** Appellant further claims that other than her relocation, there is no continuing and adverse impact on the children supporting a change in circumstance finding. And absent such a change in circumstances, Appellant claims the trial court's decision to

reallocate parental rights is an abuse of discretion. She does not take issue with the other aspects of the trial court's decision, and as such, we do not review them.

> R.C. 3109.04 [governing parental rights and responsibilities] requires a finding of a "change in circumstances." Such a determination when made by a trial judge should not be disturbed, absent an abuse of discretion. In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change.

*Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997), syllabus.

**{¶38}** An abuse of discretion occurs if the court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). When reviewing for an abuse of discretion, the fact that the reviewing court would have reached a different result is not enough to find error. *Id.* "[R]esults can often vary in different cases, as there can be more than one reasonable decision from which the trial court could choose." *Sokolowski v. Sokolowski*, 7th Dist. Jefferson No. 16 JE 0028, 2017-Ohio-9216, 101 N.E.3d 1105, ¶ 41, quoting *Yancey v. Yancey*, 7th Dist. Mahoning No. 07 MA 33, 2007-Ohio-5045, ¶ 25.

**{¶39}** The function of the court of appeals is not to weigh the evidence, but to "'ascertain from the record whether there is some competent evidence to sustain the findings of the trial court.'" *Foxhall v. Lauderdale,* 11th Dist. Portage No. 2011-P-0006, 2011-Ohio-6213, ¶ 28, quoting *Clyborn v. Clyborn,* 93 Ohio App.3d 192, 196, 638 N.E.2d 112 (3d Dist.1994).

> The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.

(Citations omitted.) *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

**{¶40}** R.C. 3109.04(E)(1)(a) governs the court's decision and the parties' arguments. It states:

> The court *shall not modify* a prior decree allocating parental rights and responsibilities for the care of children *unless it finds*, based on facts that

have arisen since the prior decree or that were unknown to the court at the time of the prior decree, *that a change has occurred in the circumstances* of the child [or] the child's residential parent * * *, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child *and* one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

(Emphasis added.)

{¶41} As the moving party, Appellee had the burden to prove a change in circumstances occurred triggering the court to address the other prongs of the test, i.e., best interest of the children and the harm likely to be caused by a change of environment outweighs the advantages of the change of environment to the child. *Id.* The phrase change in circumstances "is intended to denote an event, occurrence, or situation which has a material and adverse effect upon a child." *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604, 737 N.E.2d 551 (7th Dist. 2000), quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 445 N.E.2d 1153 (1982).

{¶42} Ohio appellate courts, including this one, have concluded relocation alone is not sufficient to constitute a change in circumstances; however, it is a factor in determining whether a change in circumstances has occurred. *Rohrbaugh*, *supra*, at 604-605; *Schiavone v. Antonelli*, 11th Dist. No. 92-T-4794, 1993 WL 548034 (Dec. 10, 1993). "[A] court may consider any attendant circumstances surrounding a residential parent's relocation that affect the child's welfare in determining whether a change in circumstances has occurred." (Citations omitted.) *In re Seitz*, 11th Dist. Trumbull No. 2002-T-0097, 2003-Ohio-5218, ¶ 38.

{¶43} A parent's decision to unilaterally move a child or make other important decisions regarding a child's welfare without consulting the other parent is one circumstance that courts have found significant in relocation cases. *Kubin v. Kubin*, 140 Ohio App.3d 367, 372-374, 747 N.E.2d 851 (12th Dist. 2000). Another relevant factor when a custodial parent relocates is whether the parents have a breakdown in

communication, resulting in their inability to communicate and cooperate. *Eatherton v. Behringer,* 3d Dist. Seneca No. 1-12-23, 2012-Ohio-5229, ¶ 43, citing *Milner v. Milner,* 10th Dist. Franklin No. 99AP-13, 1999 WL 1139965, *3 (Dec. 14, 1999).

**{¶44}** In determining whether a change in circumstances has occurred, a trial judge must have wide latitude in considering the evidence. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997), citing *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). "The trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d at 418, 674 N.E.2d 1159.

**{¶45}** Contrary to Appellant's arguments, we cannot find the court abused its discretion by finding a change in circumstances based on the facts before us. Both parties agreed that at the time of Appellant's relocation, Appellee's parenting time with the children was significant. Appellee testified he had the children every weekend for overnight visits consisting of one to two nights plus mid-week visits. Appellant did not challenge this testimony; instead, she emphasized Appellee had no overnight visits with the children from 2015 through 2018. Appellee's increased parenting time during 2020 and 2021 was by agreement of the parties, not via court order. Until Appellant decided to relocate, there was no court involvement.

**{¶46}** Appellee learned about Appellant's decision to relocate nearly 1,500 miles away with the children approximately 30 to 37 days before they were moving. The record does not indicate when Appellant and her parents decided to move to Texas in relation to the time Appellant notified Appellee.

**{¶47}** Appellee explained there are no direct flights to the San Antonio area and the distance and cost to see the children will be a substantial barrier to his parenting time and his relationship with them. His parenting time with the children will be reduced by frequency and duration if they live in Texas. Appellee testified his one-way flight to see the children in the San Antonio area was about $1,500. If he were to drive to the children's new home, it would take him about 22 hours nonstop, or about a three-day trip each way with stops. As a consequence of the distance and lack of nonstop flights, Appellee said the children's bond and relationship with him will be greatly diminished. He also explained the children's relationships with their newborn sister and his out of state family will also

be greatly reduced. As a result of the distance and barrier to seeing them, Appellee said he would no longer be an integral and hands on part of their lives.

{¶48} The magistrate and trial court agreed finding a sufficient change in circumstances occurred and cited several reasons collectively supporting its determination. Appellant filed objections. When overruling mother's objection, the trial court found in part:

> In the present case, the magistrate found and the record supports that several factors, taken collectively, support a conclusion that a change of circumstance was proven.
>
> * * *
>
> Janel moved for the sole reason that her parents were moving and she wanted to move with them and relocate with the children. Janel is highly educated but does not work. She has not looked for employment in Texas and did not testify when or if she ever plans on seeking employment in Texas. She does not have her own home in Texas. She is financially dependent on her parents.
>
> The court finds that the *Williamson* case cited by Janel is distinguishable. In *Williamson*, there was a reason the residential parent relocated from Ohio to Michigan. In that case, the mother moved because her job as a nurse ended in Ohio. She looked for an equivalent position in pay and hours in Ohio, but could not find one, except in Michigan. Here, Janel moved for no other reason than she wanted to move with her parents.
>
> * * *
>
> For all of these reasons taken collectively, the court finds that a change of circumstance was proven.

(May 31, 2022 Judgment.)

{¶49} Appellant argues the court's finding seems to punish her for being educated, but choosing to be a stay-at-home mother and relying on her parents for financial support. We disagree with her characterization of this factor in the court's analysis. Instead, the court's analysis of this fact was designed to show how Appellant's decision to relocate was not based on necessity, but rather on her preferences, with which the court evidently disagreed.

Case No. 22 MA 0065

{¶50} Moreover, the court's finding in this regard appears to be designed to highlight that Appellant did not value Appellee as a parent. Consistent with this point, the trial court also found Appellee's parenting time would be significantly reduced were Appellant allowed to relocate with the children to Texas. This, in turn, will negatively impact their relationship and bond with their father and their new sister. The significant time and expense associated with Appellee visiting the children in Texas will eliminate his weekly overnight visits and frequent presence in their lives.

{¶51} The court also took issue with the way Appellant made her decision to relocate. Appellant informed Appellee of her intent to move almost 1,500 miles away with the children approximately 30 days before she intended to move. And she decided to move without his input. "When one parent begins to cut out another parent, especially one that has been fully involved in that child's life, the best interest of the child *is* materially affected." (Emphasis sic.) *Davis v. Flickinger*, 77 Ohio St.3d at 419, 674 N.E.2d 1159.

{¶52} Although the facts before us are similar to those in our decision in *Williamson*, *supra*, in *Williamson* the trial court did <u>not</u> find a change in circumstances. Again, our standard of review dictates we must defer to the trial court's decision. *Am. Tax Funding, L.L.C. v. Robertson Sandusky Properties*, 2014-Ohio-5831, 26 N.E.3d 1202, ¶ 17 (7th Dist.) ("An abuse of discretion cannot be found merely because the reviewing court would have decided it differently.")

{¶53} The trial court further emphasized that since Appellant announced her decision to relocate, the parties experienced difficulty agreeing on Appellee's parenting time with the children, necessitating court involvement. (May 31, 2022 Judgment.) While relocation alone does not constitute a sufficient change in circumstance, relocating such a significant distance that creates animosity and difficulty in previously harmonious parenting and visitation arrangements may constitute an unforeseen change in circumstances. *See Davis v. Flickinger*, *supra*, at 419. Since Appellant communicated her decision to relocate out of state, the parties' ostensibly agreeable parenting arrangement has soured and necessitated court involvement to resolve parenting time disputes where there had previously been no court involvement.

{¶54} Although we may have reached a different conclusion, we must not substitute our judgment for that of the trial court. Because there is competent evidence to sustain the trial court's change in circumstances finding, we find no error.

## Conclusion

**{¶55}** Based on the foregoing, we affirm the trial court's decision.

D'Apolito, P. J., concurs.

Hanni, J. concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas Division of Domestic Relations of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**